# UTAH COMMERCIAL AND SAVINGS BANK v. FOX
## et al.

No. 2249. Decided December 28, 1911 (120 Pac. 840).

1. APPEAL AND ERROR—HARMLESS ERROR—IMMATERIAL QUESTIONS. The error in a finding, because contrary to all the evidence, is immaterial where the judgment corrected the error. (Page 213.)

2. APPEAL AND ERROR—HARMLESS ERROR—REFUSAL TO MAKE FINDINGS. Where additional findings, though proper, if made could not affect the final result, the defeated party could not complain of the court's failure to make the additional findings. (Page 215.)

3. TRIAL—ISSUES—EVIDENCE—FINDINGS. Where, in an action by a bank to foreclose a mortgage to secure a note, the maker claimed that the note and mortgage, though nominally to the cashier of the bank, were in fact for the benefit of the bank to compromise a claim held by it, that he had delivered to the bank, as collateral, notes against third persons, which the bank had collected, and had thereby received sufficient money to pay off the mortgage, and the evidence of officers of the bank showed either that the consideration for the mortgage was as testified to by the maker or that it was without consideration, and that the bank had purchased the notes against the third persons, the issues really were the consideration for the mortgage and whether the alleged collateral notes were such in fact or were a straight purchase by the bank, and a mere finding that no part of the indebtedness represented by the note and mortgage had been paid excepting a specified sum, leaving a balance due as principal, was insufficient. (Page 215.)

4. BILLS AND NOTES—BONA FIDE HOLDER. An innocent purchaser of a note may recover thereon, though it was without consideration, but where a transferee of the note, shows that it had knowledge of the fact that the maker received nothing for the note, it could not rely on the general presumption that a note imports a consideration so as to recover as an innocent purchaser. (Page 217.)

5. MORTGAGES—FORECLOSURE—PLEADINGS—ISSUES. Where, in an action to foreclose a mortgage, the pleadings raised the issues of the consideration of the note, and whether the maker had delivered notes made by third persons as collateral, and it

was admitted in the pleadings that the notes of the third persons had been paid, the court properly disregarded the claim that the admission of payment of such notes was inadvertently made, and the claim of the maker that he had deposited with such notes as collateral mining stock of great value which had never been accounted for. (Page 218.)

6. MORTGAGES—FORECLOSURE—DELAY IN PROSECUTION—"LACHES." A delay in the prosecution of a suit to foreclose a mortgage does not prevent the granting of proper relief where either party could have compelled a hearing, but both failed to act, especially since delay unaccompanied by circumstances, which in some way show inexcusable negligence, which will result in giving the party in fault an unfair advantage, or which will produce injustice in some way, is ordinarily, when standing alone, insufficient to prevent relief on the ground of laches. (Page 218.)

7. MORTGAGES—FORECLOSURE—TRIAL. Where the prosecution of an action by a bank to foreclose a mortgage to secure a note was delayed for many years, through the fault of both parties, and during the interval the president of the bank at the time of the acquisition of the note and mortgage had died, the court should permit either party to submit any evidence shedding any light on the issues involved. (Page 219.)

8. TRIAL—ISSUES—BURDEN OF PROOF—FINDINGS. Where the burden of proof cast on one party is not met, or where there is no evidence on a material issue, the adverse party is entitled to a finding which may be either affirmative or negative depending on the circumstances. (Page 220.)

9. LIMITATION OF ACTIONS—CROSS-DEMANDS—LIMITATIONS. Under Comp. Laws 1907, sec. 2971, providing that when cross-demands exist, under such circumstances that if one party had brought an action against the other a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, claims of a party, though barred by limitations in so far as to prevent a judgment in his favor, may be applied as a set-off against his adversary's claims. (Page 220.)

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by Utah Commerical and Savings Bank against Jesse W. Fox and another.

Judgment for plaintiff, defendants appeal.

REVERSED AND REMANDED FOR NEW TRIAL.

*Johnson & Fowler* for appellants.

*Moyle & Van Cott* for respondent.

FRICK, C. J.

In view of the conclusions reached by us it becomes important to state the precise issues raised by the pleadings.

After stating the corporate capacity of respondent, the substance of the material allegations contained in the complaint are as follows: (2) That on the 13th days of July, 1893, the appellant Jesse W. Fox, Jr., and Ruth M. Fox, executed and delivered to one M. E. Cummings their certain promissory note in writing for the sum of $4147.77, payable on or before December 1, 1893, with ten per cent. interest. (3) That on the date aforesaid the payors of said note, to secure the payment thereof, also executed and delivered to the payee a certain mortgage by which they conveyed certain real estate, duly described, in Salt Lake City, and that said mortgage was duly recorded. (4) That on July 17, 1895, the payee of said note, "for a valuable consideration," sold and delivered the same, and assigned said mortagage, to the respondent, who at the time the action was commenced, it is alleged, was the owner of said note and mortgage. (5) That the note and mortgage provided for a five per cent. attorney's fee. Upon substantially the foregoing allegations respondent prayed for a decree of foreclosure; for the sale of the mortgaged premises, and conditionally for a deficiency judgment. A demurrer to the complaint was filed and overruled, after which nothing seems to have been done in the action until the 2d day of November, 1906, when the appellant Jesse W. Fox, Jr., filed his separate answer in which he, in substance, avers as follows:

Appellant admits the corporate capacity of the respondent; admits that the note sued on was executed and delivered to said Cummings, but avers that the note in fact was given to said Cummings for the benefit of respondent, and that the respondent was the real owner thereof from its inception; admits the execution and delivery of the mortgage. Appel-

lant, for want of knowledge, denies that said Cummings sold said note and mortgage to respondent, but admits that the respondent is the owner thereof; and avers that said note has been fully paid. The appellant then proceeds to set forth in what he denominates a counterclaim in substance the following facts: That he and Ruth M. Fox, on the 13th day of July aforesaid, executed and delivered to said M. E. Cummings, as cashier of the respondent bank, the note sued on, and that appellant and said Ruth M. Fox executed and delivered their certain mortgage whereby they conveyed certain property which is duly described; that in December, 1894, the appellant, to further secure the payment of said note given as aforesaid for $4147.77, delivered to the respondent bank two certain promissory notes executed by one John Beck, one of said notes bearing date August 24, 1892, and given for the sum of $5250, made payable to the appellant with ten per cent. interest, and the other bearing date April 5, 1892, given for the sum of $1,575, made payable in one year from date with ten per cent. interest, both of which notes were owned by appellant, and which notes said respondent agreed to collect and to apply the proceeds thereof, so far as necessary, to the discharge and satisfaction of the note in suit, and to account to appellant for any surplus; that on October 14, 1895, appellant also conveyed by what purported to be absolute deed, but which was in fact a mortgage, certain real property, describing it; that respondent agreed to sell said real property, and to account to appellant for the proceeds thereof; that on the 10th day of July, 1901, respondent sold said real estate to one Anne C. Hansen for the sum of $275, which sum it received and now holds in trust for appellant; that on the 21st day of November, 1895, the said note for $5250, with the accrued interest thereon, was paid in full to respondent, the principal and interest amounting to the sum of $6947.90, and that on January 11, 1897, the note for $1575, with interest, was paid in full to respondent, the prinicpal and interest amounting to $2309.43; that respondent never informed appellant of said payments, and appellant only a short time before the filing of his answer learned of said payments so made as afore-

said; that in the year 1901 (the court found this sale took place in September, 1903) the respondent also sold a portion of the land described in the mortgage which was given to secure the note in suit, and from which sale the respondent obtained the sum of $1000; that when said $1000 was so obtained by respondent appellant did not know that the Beck notes had been paid to respondent as aforesaid; that at the time respondent received payment of said Beck note for $5250 the aggregate amount, including interest, that was due from appellant to respondent upon the note sued on was $5124.71, which, when subtracted from the amount paid to respondent upon said Beck note amounting to the sum of $6947.90, left a surplus or overpayment on the note in suit amounting to $1823.19 in the hands of respondent, and when the other Beck note for $1575 was paid to respondent, aggregating, with interest, the sum of $2309.43, appellant was entitled to the whole of said sum, and respondent holds the two amounts aforesaid in trust for him. The appellant, therefore, claimed that the respondent was authorized to deduct from the proceeds it had received on the Beck notes the sum of $5124.71 and no more; that it had received on the Beck notes the sum of $9257.23, or a surplus amounting to the sum of $4132.62, which appellant claims it held in trust for him. He further claimed that he was entitled to the sum of $275 and the further sum of $1000 received from the sales of the real estate before referred to, together with legal interest on all of said sums.

To the foregoing answer and counterclaim respondent filed a reply, in which after admitting the execution and delivery of the note and mortgage in suit and the delivery of the deed to the land which appellant averred was sold to Anne C. Hansen, respondent averred that it had purchased from appellant the two Beck notes and admitted that the note for $5250 was paid November 21, 1895, and that the other one for $1575, was paid February 11, 1897, and further averred that "the plaintiff (respondent) denies that either of said notes was the property of said defendant (appellant) during the time that the same or either of them was in the possession of

the plaintiff, or that the payments made on either of said notes should have been credited on the note sued on." It is further averred in the reply that the respondent sold the land to Anne C. Hansen for the sum of $250, which sum was duly credited on a "certain indebtedness of said defendant to the plaintiff, but not on the note sued on." Respondent also admitted the sale of a portion of the mortgaged premises and the receipt of the sum of $1000 therefor, and denied all averments in the answer and counterclaim not admitted. Respondent further pleaded that all and singular the claims set forth by appellant in his counterclaim were barred.

It will thus be seen that the only material differences between the claims of appellant and respondent, so far as the pleadings are concerned, were substantially these: Appellant contended that the Beck notes were owned by him and were delivered to respondent as collateral, or to further secure the payment of the note sued on, and that respondent had agreed to collect said notes and to apply the proceeds thereof to the discharge of the note in suit; that said two notes were paid in full to respondent; that the amount realized thereon was much in excess of the amount owing by appellant to respondent on the note sued on, and that therefore the excess belonged to him. He further claimed the amounts respondent had received from the land sales. Upon the other hand, while respondent admitted that the Beck notes were paid it claimed that it had purchased them from appellant and that therefore he did not own them after their delivery to it. Respondent further admitted the sale of the land referred to, but denied appellant's claim to the proceeds derived therefrom. There were thus only a few really contested questions that remained to be determined by the court. Of these there are at least three that were very material, namely: (1) What was the consideration for the note sued on; was it as claimed by appellant? (2) Was appellant the owner of the two Beck notes at the time and after he delivered them to the respondent, and was he entitled to the proceeds thereof when paid as claimed by him? (3) Did respondent receive said notes as collateral to be collected by it and upon receipt of the proceeds to ap-

ply the same in payment of the note in suit? If these, or even the last two questions, are answered in favor of appellant, then clearly the judgment cannot prevail. The evidence upon the foregoing questions is not voluminous. Appellant in effect testified that while the note in suit was given to Mr. Cummings it nevertheless always was the property of respondent; that it was given by him in settlement, or as a compromise, of a larger claim the respondent held against him, and that he received no consideration for said note except said compromise settlement; that he owned the two Beck notes and had delivered them to a certain bank in Salt Lake City for collection; that said bank had collected only the sum of about forty-three dollars thereon; that thereupon appellant spoke to the president of the respondent bank and told him about the two Beck notes; that the president requested appellant to bring the two notes to the bank and it would collect them and would apply the proceeds thereof in payment of the note in suit; that pursuant to said request appellant delivered said Beck notes to the respondent bank and the same were received by it for the purpose aforesaid. There are some circumstances which, prima facie, strongly corroborate appellant's statement that the note sued on was given for the purpose stated by him. Upon the other hand there are two witnesses who testified for the respondent, namely, Mr. Bachman, who was the bookkeeper for the bank at the time the two Beck notes were received by it, and Mr. Jennings, who was the cashier at said time. Neither of these witnesses, however, had, or claimed to have, any personal knowledge respecting the transactions between the bank and appellant upon which the appellant says the note in suit was based. Their testimony in the main consisted of deductions which were based upon the meager entries made in the bank book known as the discount register, which entries were made by Mr. Bachman as bookkeeper. The deductions of said witnesses, taken in connection with their personal knowledge of the banks methods of doing business, is about all that we have. The bookkeeper testified that in view of the entries in the book aforesaid, he concluded that the two Beck notes "were received by the bank in settlement of the

Arta D. Young note for $20,000; and the other notes were the Hardy Bros. Fox notes and were received in the same way by settling the Arta D. Young note." The Arta D. Young note here referred to is the identical note that appellant claims was paid or compromised by giving the note and mortgage in suit. Mr. Jennings, the cashier, in effect agrees with the bookkeeper that the Beck notes were received in settlment of the Young note. Mr. Jennings, however, corroborates the appellant to some extent. For instance, he says that the appellant received nothing for the note in suit at the time it was made and delivered. In referring to this subject the witness testified: "Q. Do you know what consideration Fox (appellant) received then? A. He didn't receive any consideration. Q. He didn't receive any consideration for giving the note and mortgage that you are suing on here? A. No, sir." These statements are significant when considered in connection with appellant's claim that the note in suit was given in consideration that he be released from the $20,000 Arta D. Young note on which the respondent claimed he was liable with the others that are referred to in the bookkeeper's statement to which we have already referred. Moreover, the fact that the note and mortgage in question were given to Mr. Cummings, the then cashier of the respondent bank, is not of great importance in view that through the whole trial respondent practically conceded that it and not Cummings was the real party to the transaction of which said note was a part. At all events there is not a syllable of evidence disputing appellant's claim that the respondent was the real owner of said note from its inception, although Cummings had been made the payee thereof. With the exception of some explanatory evidence relating to the foregoing statements, and with the further exception of some evidence with regard to some subsidiary matters to which we shall refer later, the foregoing constitutes the substance of the evidence upon the subjects to which we have referred.

Upon the appellant's claims the court found as follows:

"That the principal matters complained of by said parties against each other accrued about ten years before the counter-

claim herein was filed. That thirteen years after the original action matured and nearly ten years after the matters complained of in the counterclaim, the parties applied to the court to adjust their claims. That statutes of limitations, and the doctrine of laches as applied in equity, rest upon the principle that repose of society requires that stale claims be permitted to sleep. That both the plaintiff and said defendant Jesse W. Fox, Jr., have been guilty of laches to a gross extent, and that therefore equity requires nothing more than that the mortgage of the plaintiff be foreclosed, and the sale of the property to satisfy it, without a deficiency judgment being thereafter docketed and that the defendant Jesse W. Fox, Jr., is not entitled to recover anything upon his counterclaim."

Upon respondent's claim the court in substance found:

(1)    That the respondent was duly incorporated. (This was admitted in the pleadings.)

(2 and 3)    That on the 13th day of July, 1893, the appellant Jesse W. Fox, Jr., and Ruth M. Fox made and delivered the note and mortgage sued on. (This was also admitted and required no special finding.)

We remark, however, that in this finding it is stated that the note in suit was given for $5329.51. This finding is contrary to all the admissions and the evidence. In view, however, that in the judgment the foregoing error, if it be one, is corrected, the finding is not material.

(4)    In this finding it is stated that on the 17th day of July, 1895, "for a valuable consideration the said M. E. Cummings sold and transferred by indorsement said note," meaning the note in suit, and that he at that time also assigned the mortgage in question to respondent. It is also found that respondent is the owner of said note and mortgage. None of the foregoing facts was disputed by the pleadings, except the sale of the note by Cummings to respondent. We have read every word of the testimony preserved in the bill of exceptions, and we have been unable to find any evidence that justifies the finding of the sale except the naked indorsement of the note by Cummings; nor that respondent paid anything for the note. As already stated, it was apparently conceded at the trial that

although Cummings was made the payee of the note, yet the bank was nevertheless the real owner thereof from its inception.

(5)    That respondent in the year 1903 sold a portion of the mortgaged premises and received the sum of $1000 from said sale.

The sixth finding is in the following words:

"That no part of said indebtedness has been paid excepting the sum of $1000 paid on said indebtedness on the 21st day of September, 1903, leaving a balance due and unpaid of $4329.51 principal and $6368.30 interest to the date hereof."

We confess our inability to understand the finding for the following reasons: The principal of the original note only amounted to $4147.77. If it be assumed, therefore, that the $1000 payment which the court credited on said note was all applied to the payment of interest, yet we cannot see how the principal was increased from $4147.77 to $4329.51 as stated in this finding. It may be that it is possible to reconcile this finding with the evidence. We have, however, not been able to do so, and cannot understand by what process of reasoning the principal of the note was changed from $4147.77 to $4329.51.

Upon the foregoing findings the court made conclusions of law that respondent is entitled to judgment for the amount stated in the last finding. A decree of foreclosure was entered in accordance with the findings and conclusions aforesaid.

The appellant in substance assigns the following errors: (1) That the court erred in failing, and refusing when requested, to make findings upon the matters presented by his affirmative defense and counterclaim; (2) that the evidence is insufficient to sustain the findings made by the court; (3) that the conclusions of law and judgment are contrary to and not sustained by the findings, and (4) that the judgment is contrary to law.

It will be observed that the findings as made by the court, with but one or two exceptions, do not relate to contested mat-

ters, but cover matters which are admitted by the pleadings. Counsel for respondent, however, insist that in view of the pleadings the gist of the whole controversy is disposed of by the sixth finding, which we have set forth in full, when that finding is considered in connection with the finding that the court made with regard to the statute of limitations and laches. It is contended that with these findings in favor of respondent any other findings which were proper for the court to have made upon the contested matters would have been immaterial in view that any such findings, even if made, could not change or materially affect the final result as the same was declared by the court.

If this contention be sound, then, although it were conceded that it would have been proper for the court to have made additional findings, yet, if such additional findings, if made, could not affect the final result reached by the court, the appellant cannot complain.

But is the contention made by respondent's counsel sound when applied to the real controversy and the evidence relating thereto?

It seems to us that the key to the correct solution of the matters of difference between the parties primarily depends upon how the following questions are answered: (1) What was the real consideration for the note and mortgage in suit? Was it, or was it not, for the purpose as claimed by appellant? (2) Did the respondent receive the two Beck notes for the purpose claimed by appellant, and were the proceeds to be derived therefrom, so far as necessary for that purpose, to be applied in payment of the note in suit? or were they received in settlement of the $20,000 note as claimed by the bookkeeper, or were they purchased outright by the respondent as alleged in respondent's reply? It will not do to say, as counsel for respondent contend, that the foregoing propositions are all involved and covered by the sixth finding. If that finding is sufficient to answer all questions raised by the pleadings and the evidence, then we cannot see why a similar finding would not be sufficient in every case regardless of what the contested questions may be. It might

be said in any case, as it is in effect contended here, that inasmuch as the court has found for the plaintiff upon its claim it must necessarily have found against the defendant upon his claims. But although this were conceded to be all that the defendant could ask under ordinary circumstances, yet, in this case, such a rule, even if correct, cannot be applied, because the finding as it stands is clearly contrary to the evidence. As we have already pointed out, the only difference between the appellant's testimony and that given by the bookkeeper and cashier, both of whom testified for respondent, in effect is that appellant testified that the note and mortgage in suit were given by him in consideration that he be released from an obligation he may have assumed with others on a prior $20,000 note, and that the two Beck notes were by him delivered to respondent to be by it collected and the proceeds thereof applied, so far as necessary, in satisfaction of the note in suit, while the testimony of the bookkeeper and the cashier is to the effect that the two Beck notes were delivered to the bank in settlement of the said $20,000 note. The cashier further says that appellant received no consideration for the note in suit when he made and delivered it. As the testimony now stands it seems clear that unless appellant received some such consideration as he claims for the note in suit, then he received no consideration at all. In view that respondent admitted in its answer that the Beck notes were paid in full it is not of controlling importance whether appellant's or the bookkeeper's statement be found to be true. If appellant's statements are true, then the proceeds derived from the Beck notes should have been applied in satisfaction of the note in suit, and if so applied that note would have been fully paid when this action was commenced. Upon the other hand, if the Beck notes were received with other notes in settlement of the $20,000 note, then that note ceased to be an obligation against appellant when he delivered the Beck notes to respondent. Therefore, if such be the fact, then, in view of the cashier's statement that neither the respondent nor any one else ever gave any consideration for the note in suit, we cannot see how respondent can recover upon said note.

It is true that if respondent claimed as an innocent purchaser, which it does not, or if it relied upon the general presumption that a negotiable instrument imports a consideration, it might still recover on the note although it was without consideration. In this case, however, the respondent's own witnesses declare that the appellant received nothing for the note, and in that way negatived the presumption, and hence it follows, so far as the evidence discloses, that if the consideration was not as claimed by appellant, then there was none whatever. By reason of the foregoing evidence the contention of respondent's counsel that appellant was indebted to respondent upon other claims is, for the purposes of this case, manifestly immaterial. The note in suit was either given for the purpose stated by appellant or it was not. The Beck notes were either delivered by him as he claims or they were not, and as the evidence now stands he either received the consideration for the note in suit as he claims or he received nothing for it. The question therefore arises, will a court of equity decree the foreclosure of a mortgage which is given to secure a note which the evidence shows has either been paid in full or is conceded by the plaintiff to be without consideration? We think no one will so contend. The true status of this case, as the evidence now stands, seems to be covered by the foregoing statement. If the appellant's testimony be taken as true, then the note in suit was fully paid before this action was commenced. Upon the other hand, if the bookkeeper's statement be accepted as true, then appellant's obligation with respect to the $20,000 note was fully satisfied by the delivery by him of the two Beck notes. Again, according to the statement of the cashier, if the consideration for the note in suit was not as claimed by appellant, then the note was without any consideration whatever.

If this were all that appeared in the record we would have no difficulty in making or directing findings to the effect that the note in suit had been fully discharged when this action was commenced; that since the claim for the $1000 received by respondent for the sale of a portion of the mortgaged

premises did not arise until September, 1903, less than four years before appellant's answer in this case was filed, he would be entitled to recover that amount, and since the right to recover on all other claims preferred by appellant had existed longer than the statutory period required to bar them when his answer was filed they should be barred. During the trial of the case, however, some matters relating to the admission of evidence were discussed by counsel on both sides, which, in view of the state of the pleadings, the court held to be irrelevant.

For instance, it appears that while the respondent in its reply averred that it had purchased the two notes from appellant its counsel during the trial contended that said notes were in fact purchased from some one else. It was further contended that while respondent admitted in said reply that said notes were fully paid, yet said admission was inadvertently made and was not true in fact. Upon the other hand, appellant's counsel claim that there was deposited with the Beck notes as collateral a large amount of mining stock which was of great value, and which had never been accounted for by respondent. All these matters were, however, refused consideration by the court, and properly so in view of the state of the pleadings. It may also be said that by reason of the statute of limitations the appellant may not avail himself of any claim that may arise out of the mining stock transaction, but while that may be so he nevertheless may be entitled to avail himself of any legal claim he had against respondent so long as such claims are applied only in discharge of any legal claim respondent had against him. Nor, in view of the state of the pleadings, do we see how the question of laches was involved.

It is true that this action was commenced in December, 1899. The issues were, however, not finally made up until January, 1907, when respondent filed its reply. The case was tried in December, 1908, and the decision of the court filed in April, 1909. A motion for a new trial was filed which remained undisposed of for more than sixteen months, or until February 11, 1911. The case finally reached this

court, and was submitted in October, 1911. So far as delays are concerned, no doubt the foregoing record may be said to be extraordinary. But delay unaccompanied by circumstances which in some way establish inexcusable negligence which will result in giving the party in fault an unfair advantage, or which will produce injustice in some way, is ordinarily, when standing alone, not enough to prevent relief upon the ground of laches. See 5 Words & Phrases, 3969. The statute of limitations ordinarily determines the period within which a party may seek relief, and we have found nothing in the pleadings, or in the evidence for that matter, which takes this case out of the ordinary rule, notwithstanding the fact that the action has been pending for many years. Either party could have compelled a hearing, but they both failed to act. We, under the circumstances, can see no good reason why, as against each other, relief should not be made dependent upon the ordinary statute of limitations. The witnesses for the bank also testified that from the bank's methods in dealing with promissory notes they inferred that the Beck notes were not received for the purpose asserted by appellant. What those methods were is not disclosed. Since the purpose for which the Beck notes were received by the bank is one of the crucial questions in this case, and in view that the president of the bank, who, it is claimed, made the arrangements with appellant, is dead, it may be of great importance to know what the bank's methods of doing business in this regard were. Would the notes have been entered in a different book, or would the entry thereof have been otherwise than it was in case the notes were actually received by the bank for the purpose claimed by appellant, are material questions upon which the evidence is silent.

In view that the case is equitable and is thus triable to the court, and in view of the death of the president and the length of time intervening between the transactions and the time of trial, the court should permit either party to submit any evidence which might shed any possible light upon and be of any aid in solving the questions involved.

Fearing, for the reasons stated, among others, that if we made or directed findings at this time and upon the present state of the pleadings and the record, that we might bring about injustice rather than justice we have concluded to reverse and remand this case to the district court for another trial. ' We have less hesitancy in doing so for the reason that appellant's counsel, with commendable frankness, have asked us to remand the case for another trial if we were not satisfied that we could either make or direct proper findings which will reflect justice to both sides. As the pleadings now stand, the court upon a retrial of the cause should make findings upon the following questions: (1) What was the actual consideration for the note sued on; that is, was it or was it not given for the purpose claimed by appellant? (2) Were the two Beck notes received by the respondent for the purpose claimed by appellant, or as claimed by the bookkeeper? (3) When and how did the claims arise which appellant averred in his counterclaim against respondent? (4) Make proper findings upon all other material and contested questions. When the court has the advantage to hear and see the witnesses, findings one way or the other can ordinarily readily be made.

When the burden of proof is cast upon one party and such burden is not met, or where there is no evidence upon a material issue, the opposite party is entitled to a finding upon that issue which may be either affirmative or negative in accordance with the circumstances.

In passing upon the statute of limitations the court should bear in mind the fact that while there may be claims preferred by a party which are barred by the statute of limitations in so far as to prevent a judgment in his favor, yet, in so far as to permit him to have such claims applied as compensation for, or as a set-off against his adversary's claims, they may not be barred under the provisions of Comp. Laws 1907, sec. 2971.

The judgment is therefore reversed, and the cause remanded to the district court with directions to grant a new trial, and to proceed therewith in accordance with the views expressed in this opinion. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.