# UTAH COMMERCIAL & SAVINGS BANK v. FOX et al.

No. 2553.  Decided April 10, 1914 (140 Pac. 660).

1. APPEAL AND ERROR—FINDINGS—OPINION OF TRIAL COURT.  The opinion of the trial court may be looked to on appeal to ascertain the reasons for the decision, but it is not a finding of any fact.  (Page 330.)

2. EVIDENCE—BOOK ENTRIES—WEIGHT OF EVIDENCE.  Entries in books of a party not made by any person who knew the facts, nor made at the time the transactions occurred, but long thereafter, and not so made as to explain themselves, have but little, if any, probative force as evidence.  (Page 330.)

3. APPEAL AND ERROR—FINDINGS—REVIEW. Under the Constitution, appellant may, in a suit in equity, invoke the judgment of the Supreme Court on the facts and the law; and where the findings are clearly against the evidence, or when the Supreme Court is satisfied that the presumption of correctness of the findings have been overcome by the record, the Supreme Court must make or direct findings according to the evidence and the law applicable thereto.[1]  (Page 331.)

4. EVIDENCE—CREDIBILITY OF WITNESS. The testimony of an unimpeached witness, not contrary to the usual course of nature or for some other reason unworthy of belief, must be considered by the court in determining the facts.  (Page 331.)

5. JUDGMENT—ENTRY—CANCELLATION OF DEBT MERGED IN JUDGMENT. The trial court should not enter judgment without requiring plaintiff obtaining the judgment to produce for cancellation the evidence of the debt merged in the judgment.  (Page 332.)

6. BILLS AND NOTES—PRESUMPTION FROM POSSESSION.  A holder of notes, who obtains a judgment thereon, has no legal right to retain possession of the notes, and any presumption arising from possession is without any force as to him.  (Page 333.)

7. PLEDGES—PAYMENT OF DEBT—RIGHTS OF PLEDGEE. Where a note secured by collaterals is paid, the collaterals are not enforceable in the hands of the holder of the note.  (Page 333.)

8. BILLS AND NOTES—ACTIONS—PAYMENT—EVIDENCE.  Evidence held to show that a note sued on had been paid before the commencement of the action.  (Page 333.)

9. LIMITATION OF ACTIONS—COUNTERCLAIM—LIMITATIONS.  Where money paid in excess of what should have been paid on a debt could not be recovered because of the bar of limitations, a counterclaim for the overpayment was barred, so that a judgment therefor could not be sustained.  (Page 335.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Utah Commercial & Savings Bank against Jesse W. Fox and others.

Judgment for plaintiff.  Defendants appeal.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[1] Campbell v. Gowans, 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

*Benjamin F. Johnson* for appellant.

*Moyle & Van Cott* and *A. E. Moreton* for respondent.

RESPONDENT'S POINTS.

Upon the trial of this action the respondent bank, in pursuance of the provisions of Sec. 3413 of the Compiled Laws of Utah, 1907, objected to Fox's detailing the conversation alleged to have been had between him and Mr. Armstrong, the deceased president of the respondent bank, upon the ground that this statute is broad enough, where one of the parties to the transaction is a corporation, to extend to the deceased officer or agent of such corporation. The testimony was admitted subject to respondent's objection, but later the objection of respondent was overruled by the court, and the testimony finally admitted, to which ruling respondent duly excepted. The following authorities support respondent's contention: Jones on Evidence (2d Ed.), Sec. 789; *Williams v. Edwards,* 7 S. W. 429; *Parish v. Weed Sewing Machine,* 7 S. E. 138; *Sidway v. Mo. Land & L. S. Co.,* 63 S. W. 705, 718; *Murray v. East End Imp. Co.,* 60 S. W. 648; *Tarr v. Kimbrough,* 34 S. W. 528; *Farmers' Union El. Co. v. Syndicate Ins. Co.,* 41 N. W. 547.

It is a well esablished rule that one in possession of negotiable paper, payable to bearer and endorsed in blank is presumed to be the owner. (*Rubey v. Culbertson,* 35 Iowa 264; *Bachelor v. Priest,* 12 Pick. 399; *Mars v. Mars,* 27 S. C. 132; *James v. Chalmers,* 6 N. Y. 209; *Collins v. Gilbert,* 94 U. S. 753; *Perot v. Cooper,* 17 Colo. 80.)

FRICK, J.

This action in equity was commenced to foreclose a mortgage. The case is here on a second appeal. For first appeal see 40 Utah, 205, 120 Pac. 840. On the first appeal we stated the issues fully and shall do no more in that regard than to refer to that opinion. We reversed the judgment in favor of the plaintiff on the first appeal, and upon the second

trial the court again made findings and entered judgment
against the defendants, and they again appeal. It was con-
tended on the last hearing that in the former opinion the
facts with regard to the note in question are not correctly
stated. In view that the promissory notes involved here
were not produced in evidence, and for the reason that the
facts were not clearly presented in the record, we did the
best we could in that regard, and, so as to be sure not to mis-
lead any one, we quoted the precise words of one of plain-
tiff's witnesses with respect to what the particular note in
question was given for. See 40 Utah, 205, 120 Pac. 842,
right-hand column. The effect of the testimony of the wit-
nesses on the last trial is substantially the same as on the
former, except that on many of the points the evidence is
much more explicit than it was on the first trial. On the
former appeal we suggested that the trial court make find-
ings: "(1) What was the actual consideration for the note
sued on; that is, was it or was it not given for the purpose
claimed by appellants? (2) Were the two Beck notes re-
ceived by the respondent bank for the purpose claimed by
the appellants, or as claimed by the bookkeeper? (3) When
and how did the claims arise which appellants averred in
their counterclaim against respondent?" The court made
findings on the last two questions but made none on the first
one, except that there was a consideration for the note. We
shall state the facts so far as it may be necessary to illus-
trate the points decided.

The evidence shows that on March 1, 1892, the appellant
Jesse W. Fox and L. G. and O. H. Hardy made and de-
livered to one A. D. Young five promissory notes for $4000
each, thereby evidencing an indebtedness of $20,000. Three
of the foregoing notes were made payable in eighteen
months from date, one in fifteen months, and when the other
was made payable, whether in a shorter or longer time, is
not shown. We shall assume, however, that it was made
payable in fifteen months. One of said notes was not ac-
counted for at the trial, and no one seemed to know what be-
came of it. On August, 11, 1892, A. D. Young, the payee

of the foregoing five notes, made and delivered to the respondent bank his one promissory note for $20,000, payable in ninety days from date. In said note it is recited that the maker thereof has "deposited as collateral security five notes of L. G. Hardy, Jesse W. Fox, Jr., and O. H. Hardy of four thousand each and note of John Beck of seven thousand five hundred of the nominal value of twenty-seven thousand five hundred dollars." The evidence also shows that the payment of the $20,000 note was further secured by a mortgage on two parcels of real estate lying in the block immediately north of Brigham Street and west of State Street in Salt Lake City, and also by 1000 shares of Bullion-Beck mining stock, which at the time was paying considerable dividends. The value is not shown of either the real estate or mining stock, but it was conceded at the trial that respondent had collected a considerable sum as dividends on the stock, and that at least some of the proceeds derived from such dividends should have been credited either on the $20,000 note or on the five $4000-notes; and the testimony indicates that such was done, although no indorsements to that effect are shown on the notes themselves. In making the computations herein, we have, however, excluded the dividends. What the proceeds of the real estate were is not shown. Apparently matters ran along until at least one of the $4000 notes was about to mature or had matured, when, according to appellant's testimony, some time in the early part of July, 1893, Fox was notified by the respondent bank to call at the bank for the purpose of making some arrangements with respect to the payment of the notes which he had signed with the two Hardys as aforesaid. He says that at least one, and he thought two, of the $4000 notes had been paid by the Hardys or by one of them at that time. He went to the bank, however, and says that while there he made the following proposition to the bank respecting his future liability on the Hardy-Fox notes, namely: That he would give the bank a note in an amount equal to one of the $4000 notes, with accrued interest, and secure the same by a mortgage on some real estate he owned in the western part of

Salt Lake City, if the bank would discharge him from all liability on the other $4000 notes. He says that, while respondent did not accept his proposition on that day, he nevertheless was notified in a few days thereafter that it had accepted his proposition, whereupon, on the 13th day of July, 1893, he and his wife went to the office of respondent's attorney, Mr. C. O. Whittemore, and then made and delivered the note and mortgage sued on in this action. The note was payable to M. E. Cummings, the cashier of the respondent bank, and was payable on or before December 1, 1893, with ten per cent. interest from date. The note was given for $4147.77, which represented the principal and accrued interest up to the 13th day of July, 1893, of one of the $4000 notes. Fox also testified that the note was by him given and by the respondent received in full satisfaction of his liability on all of the $4000 notes. He further testified that, some time after he had made and delivered the note and mortgage in suit, he entered into an arrangement with the president of the respondent bank whereby it was agreed that he should obtain two certain promissory notes which he then owned, and which were deposited in another bank for collection, one of which was dated April 5, 1892, given by John Beck for $1575, payable in one year to the order of Fox, and the other given by the same payor for $5250, payable in two years to the order of Fox, and which was dated August 24, 1892; that the respondent should collect those two notes, on the smaller one of which it seems some interest had been paid, and should apply the proceeds as collected on the note sued on until the same was fully paid. Fox further testified that, pursuant to this agreement, he deposited the two Beck notes in the respondent bank, and the indorsements made by some of respondent's employees show that during the year 1894 and subsequent thereto payments were made on those notes. The payments on the notes amounted to the sum of $5357.35, as near as we are able to ascertain the amount from the indorsements thereon.

In January, 1895, respondent commenced an action in Salt Lake County on three of the $4000 notes. While Mr.

Fox was made a nominal party to that action, yet no service of summons was made upon him, although he was always in Salt Lake City. On the 21st day of February, 1895, respondent obtained judgment by default on said three notes against L. G. and O. H. Hardy, two of the makers, for the sum of 14,366.65; the same being principal and accrued interest up to the date of the judgment. We remark that although all of the Hardy-Fox notes, as well as the note in suit, were all long past due at the time the foregoing action was commenced and judgment obtained as aforesaid, yet Mr. Fox was not sued. No explanation is made why he was not sued in 1895 with the other makers of the $4000 notes, nor why no action was brought against him on the note in suit which was then past due, nor why no action was ever commenced on the fourth one of the $4000 notes. These facts are important only as tending to sustain appellants' contention that the note in suit was by Fox given and received by the respondent bank in full satisfaction of Fox's liability on all of the $4000 notes. In view of the payments made to respondent on the two Beck notes, appellants also contend that the note in suit was paid long before this action was brought. The only attempt made to meet appellants' evidence by respondent is by having recourse to certain entries in its bank books, from which it is contended it is made to appear that the note in suit was given as additional security on the five $4000 notes, and that the Beck notes were not received by the bank for the purpose testified to by Mr. Fox, but that they were owned by the bank. Respondent, however, did not introduce a single witness who knew anything about the transactions, and the witnesses frankly admitted that all that they were able to do in the matter was to make deductions from the entries in the books favorable to respondent's contention. The deductions were also based, to some extent at least, on the usual presumptions that arise from the fact that the note in suit, as well as four of the other $4000 notes, were still in the possession of respondent. Further that the note in suit was given at a time when only one of the $4000 notes had matured. The trial court

adopted the theory of respondent's witnesses, and, while no judicial findings respecting the purpose for which the note in suit was given were made by the court, it did judicially find that the Beck notes were not deposited with respondent for the purpose testified to by Mr. Fox, but found that said notes belonged to the respondent bank.

The judge, in giving his reasons in an oral opinion, however, also held that the note sued on was not given in satisfaction of Mr. Fox's liability on the $4000 notes, but was given either as additional security for all of those notes or in payment of the one then past due. But the judge, as we read his opinion, rather inclined to the view that it was given as collateral for all of the $4000 notes. While we may look to that opinion to ascertain the judge's reasons for his decision, yet it amounts to no judicial finding of any fact, and hence has no judicial effect whatever. It is also strenuously argued by respondent's counsel that the district judge saw and heard the witnesses, and that he had the right to believe any one, or all, or none, of them, and hence his findings and conclusions should not be disturbed by us. While, under ordinary circumstances, where there is a conflict in the testimony of the witnesses who testify in a case, or where the testimony of the witnesses is more or less strongly contradicted by established facts, etc., the contention of counsel has much force, yet in the case at bar no such conditions prevail.

Even the entries in the books that were produced have little, if any, probative force, since in most instances they were made neither by the person who knew the actual facts recorded, nor were the entries made at the time the transactions occurred, but were made a long time after the transactions had taken place. Nor are the book entries such as clearly explain themselves, so that one may say they can be implicitly relied on as tending to establish a particular fact or facts. Indeed, under the ordinary rules of evidence, those entries would practically be of no probative force or effect whatever.

Again, counsel overlook the fact that under our Constitution the right of appeal is absolute, and that in equity cases the appellant has a right to invoke our judgment on the facts as well as upon the law. We therefore cannot take refuge behind the findings or conclusions of the trial court and approve them, whatever they may be, upon the ground that that court had the right to believe or to disbelieve the testimony of a witness or any number of witnesses. Where it appears to us that the findings are clearly against the evidence, or when we are satisfied that the presumptions respecting the correctness of the findings and judgment have been dissipated by what is made to appear in the record, it is our duty to determine what the findings and judgment should be, and we must then make or direct such findings and judgment which, according to the evidence and the law applicable thereto, in our judgment are right and just. Upon this question the rule applicable to equity cases in this jurisdiction is correctly stated in *Campbell v. Gowans,* 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

Appellants' testimony certainly stands without contradiction by any of the witnesses; and as we construe the record evidence, what little there is, it corroborates rather than contradicts the statements of Mr. Fox. We have no hesitancy in saying that under the circumstances of this case, so long as Mr. Fox's testimony stood unimpeached, it was the duty of the trial court to give it due and proper consideration in arriving at what the findings and judgment should be. The rule invoked by respondent's counsel does not go to the extent that the court may capriciously and without adequate reason refuse to consider the testimony of any of the witnesses. Unless the witness is impeached or his testimony is against the ordinary and usual course of nature, or for some other adequate reason is clearly not worthy of belief, the courts are bound to consider it in arriving at their conclusions. No such reasons appear in this record, and hence the testimony of Mr. Fox should have been considered by the court. The court did not

do so, but followed some theory of its own which is reflected in the oral opinion we have referred to. While the oral opinion of the district judge in no way is binding on us, yet we have carefully considered it, and, because of the judge's conclusions, have given the record a most careful scrutiny.

We cannot agree with the judge in the deductions he makes from the evidence. For example, he arrived at the conclusion, but nevertheless failed to judicially so find, that the note sued on was either given in place of one of the $4000 notes which was not found, and which was past due at the time the one in suit was given, or else that it was given as additional collateral security for the whole series of said notes. We think otherwise. Fox testified that at least one, and probably two, of the $4000 notes were paid by one or the other of the Hardys before appellant made the arrangement with respondent, testified to by him, and before he gave the note in question. We think his testimony that at least one of those notes was paid should prevail. That note we have assumed became due in fifteen months, and, assuming that it was paid when due, the amount, principal and interest, was $4500. The judge was also of the opinion that Fox's testimony could not be believed because, if it were true, then he would have paid a debt before it matured. In this connection it is insisted that the presumption is that creditors do not pay before their debts mature. Grant this, and yet the arrangement testified to by Fox is certainly a matter entirely within the range of probabilities. Again, some stress was laid on the fact that at least four of the $4000 notes were left in the possession of the respondent. If the judge's theory is the correct one, namely, that the note in suit was only given as additional collateral security, then respondent, as a matter of course, would retain all of the $4000 notes. But, under the circumstances of this case, possession of notes by respondent has no significance whatever. The evidence is without dispute that respondent had obtained judgment on three of the five $4000 notes on February 21, 1895, and yet it had possession of all of them even at the time of the trial in the dis-

trict court.  Here we thus find three notes amounting, with interest, to the sum of $14,366.65, although merged in judgment, still in the possession of the holder thereof.  In many jurisdictions this would be an impossibility, since the courts of original jurisdiction would not enter judgment without having the party produce and have canceled the evidence of the debt which was merged into the judgment.  This case illustrates that the rule is a wholesome one and should prevail everywhere.

Respondent had no legal right, therefore, to retain those notes after judgment, and hence the presumption arising from their possession is without any force in this case. The possession of those notes, therefore, in no way affects appellants' contentions.  Again, the fact that the note in suit was made payable to the cashier of the bank instead of the bank itself indicates, to our minds, that the arrangement was intended to segregate the claim against appellants from the claim against the Hardys on the other notes.  This theory is supported by the fact that Fox was not served with summons, nor was any judgment asked against him on any of the other notes, although judgment was taken against all of the other payors.  In this connection there are a number of other facts and circumstances which to our minds support appellants' contentions, but which we cannot enlarge upon further.

There is, however, another phase of the controversy which we want to discuss for a moment.  The actual payments made on the $20,000   A. D. Young note, according to the indorsements thereon made between November 11, 1892, when said note became due, and March 4, 1895, amounted to $11,260.  If we now add to that sum the amount of the one $4000 note which we have found was paid to respondent with interest, it will swell the payment to the sum of $15,760.  Then there was actually paid on the two Beck notes as principal and interest, from the indorsements made thereon, all of which was credited on the Young note, the further sum of $5,357.35.  To this sum must be added the sum of $1200, which, by indorsement, it

is shown was received from the Bullion-Beck mining stock, and which was credited on the $7500 Beck note which was originally deposited with the $20,000 note as collateral security. How much more, if anything, was received from either said note or said stock is not disclosed. Then the district court found that Fox had paid an additional $1000 which was applied on the Young note. If we now add all of those payments together, we have a total of cash payments to be applied on said note amounting to $23,317.35. This would pay the principal sum of the Young note with nearly two years' accrued interest. Whenever that note was paid, of course the collateral notes no longer were of any force while in the hands of respondent and could not have been enforced by it. But, in adition to all this, it should not be overlooked that the $20,000 note was further secured by a mortgage upon two parcels of real estate which, if not directly in the heart of Salt Lake City, were nevertheless near the center thereof. It was conceded at the trial that this real estate had been disposed of for the use and benefit of the respondent bank, and that whatever the proceeds thereof were, which no one seemed to know, were applied in discharge of the $20,000 note, and hence also of the note in suit. Assuming those two pieces of real estate were of the moderate value of $7500, it swells the payments on the A. D. Young note to the grand total of $30,817.35, with the results, if any, derived from the $7500 Beck note still to be heard from. But to all this the district court added judgment for $11,092.11. When this is finally added to the payments respondent already had, it would make the munificent sum of $41,909. 46. While it is true that some of the foregoing amounts are left to inferences merely, the inferences are, however, well supported by the facts. One of these inferences is based on the fact that all of the $4000 notes which remained in the possession of respondent are marked paid across their face. The $20,000 note is marked paid on a slip attached thereto as of July 1, 1896. The only note not marked paid is the $5250 Beck note, which was left with the respondent bank by the appellant Fox, but this note

respondent, in its reply, admitted was paid, as well as the $1575 note, and the trial court so found. In the computation we have made, however, we have not charged respondent with the full amount of the two Beck notes, but only with the amount actually paid thereon, as shown by the indorsements on the notes themselves. If we should allow what the district court allowed on those two notes, it would swell the amount paid approximately another $4000. To allow this would, however, in our judgment, be neither just nor equitable, although, as matter of law, in view of the admissions in the pleadings, it could be allowed. In view of the foregoing it is of no consequence that the judgment against the Hardys has not been paid.

Now a few words with regard to the note in suit and why we think it, too, was paid in full, regardless of the payments on the $20,000 note. The actual payments, as shown by the indorsements made on the two Beck notes, amount to $5357.35, which amount, of course, we have credited, and was to be credited also on the $20,000 note. The actual amount due on the note in suit, with accrued interest from its date to July 13, 1896, or three years after its date, amounted to $5392.10, or $34.65 in excess of the payments made on the Beck notes. Inasmuch, however, as nearly all the payments that were made on the two Beck notes were made during 1894 and 1895, the principal and accrued interest on the note sued on could not have amounted to the sum we have indicated, and hence it is safe to conclude that the note in suit was actually paid in full before this action was commenced in December, 1899. In view of all the circumstances, we have been forced to the conclusion that Mr. Fox entered into the arrangement with the respondent bank as testified to by him; that the two Beck notes were his; and that the amount actually paid on them satisfied the note in suit.

This brings us to appellants' counterclaims. With respect to the claim of $250 for real estate sold by respondent, the finding in favor of respondent on that question is clearly right, and hence appellants should not recover.     9

While we very much doubt the right of respondent to have applied the $1000 obtained by it in September, 1901, as found by the trial court, under the arrangement entered into with Mr. Fox, yet there is no doubt that no fraud or other sufficient cause to take the item out of the effect of the statute of limitations was shown, and hence appellants cannot recover on that item because of the bar of the statute. In view of the admissions in respondent's reply, the court found that much more was paid on the Beck notes than we have allowed, and for that reason counsel for appellants contends that his clients are entitled to recover the surplus on their counterclaim. This contention cannot prevail. The money was paid so many years before the counterclaim was filed, and, no cause being apparent why the statute of limitations should not apply, therefore that counterclaim must also fail. But we think that that claim cannot prevail on general principles. We do not think that under all the facts Mr. Fox paid any considerable amount in excess of what he should have paid, but we do think he paid all that respondent had a right to ask him to pay. Therefore, for this reason also, the counterclaim with regard to excessive payments should fail.

From what has been said, it follows that the judgment must be, and it accordingly is, reversed; and the cause is remanded to the district court of Salt Lake County, with directions to make findings that the note in suit was fully paid when this action was commenced by the payments made on the two Beck notes, that the statute of limitations has run on all of appellants' counterclaims, and to enter judgment dismissing the complaint, and also dismissing the counterclaims, and to make such disposition with respect to costs in that court as to the court shall seem just between the parties. Appellants to recover costs on appeal.

McCARTY, C. J., and STRAUP, J., concur.