FENSTERMAKER v. JORGENSEN et al.

No. 3129.   Decided Feb. 5, 1919.   (178 Pac. 760.)

1. APPEAL AND ERROR—REVIEW—FINDINGS—EQUITY CASE. In equity cases the Supreme Court, if in its judgment the findings and judgment of lower court are clearly against the evidence upon any material issue, will make its own findings or direct what they should be as to that issue.[1]   (Page 331.)

2. WATERS AND WATER COURSES—APPROPRIATION—APPORTIONMENT OF WATER. Where lower owner having land that is adapted for general farming purposes, but unproductive without irrigation, has from time to time increased the amount of water used for irrigation purposes, and where upper owner whose predecessors used some of the water prior to its use by lower owner's predecessors has land that is adapted mainly for grazing, but some of which can be used for pasturage and production of hay, upper owner *held* entitled to use of water one-fifth of the time.   (Page 331.)

[1] *Savings Bank* v. *Fox,* 44 Utah, 323, 140 Pac. 660; *Campbell* v. *Gowans,* 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660.

3. WATERS AND WATER COURSES—APPORTIONMENT—RESTRICTION OF USE TO CERTAIN TERRITORY. In giving upper owners use of water every fifth day, its use should not be restricted to certain land where all land sloped so that part of water used would find its way back into creek. (Page 331.)

4. WATERS AND WATER COURSES— QUANTITY — RIGHTS OF UPPER USER. Where there are two water rights upon a stream, one above the other, and where water becomes diminished during certain period of year, so that it will not flow down and reach the lower user, the upper user may use all of it during such period. (Page 333.)

5. APPEAL AND ERROR—HARMLESS ERROR—INCOMPETENT EVIDENCE. Judgment rendered after trial by court without jury will not be reversed for admission of incompetent evidence, where there is sufficient competent evidence to sustain the finding.[2] (Page 334.)

6. WATERS AND WATER COURSES—USE OF WATER—DAMAGES. In lower owner's action against upper owner to quiet title to certain water, where upper and lower owners were entitled to use of water a portion of time, court improperly awarded lower owner damages for upper owner's use of the water. (Page 334.)

7. COSTS—APPEAL—SUBSTANTIAL MODIFICATION OF JUDGMENT. Where appellate court modifies judgment in favor of appellant in material and substantial particulars, respondent will ordinarily be required to pay costs on appeal. (Page 335.)

8. COSTS—APPEAL—MODIFICATION OF JUDGMENT. Where lower owner was forced to bring action against upper owner, or surrender his rights to use of any of the water, each party will be required to pay his own costs on upper owner's appeal, though judgment was modified in substantial particulars in favor of upper owner. (Page 335.)

Appeal from the District Court of Box Elder County, First District; *Hon. J. D. Call,* Judge.

Action by Perry R. Fenstermaker against Isaac Jorgensen and others.

From decree rendered, defendants appeal.

REMANDED, with directions to modify findings of fact, conclusions of law, and decree, and in other respects affirmed.

---

[2] *Spratt* v. *Paulson,* 49 Utah, 9, 161 Pac. 1120.

*Nebeker, Thatcher & Bowen* and *George Halverson* for appellants.

*B. C. Call* for respondent.

FRICK, J.

The plaintiff commenced this action against the defendants to quiet the title to certain water, and to enjoin the defendants from using the same and interfering therewith. The defendants denied plaintiff's claims to the water in question, and as a counterclaim, alleged that they were the owners of a large portion of the water in question. It is not necessary to set forth the pleadings.

The evidence produced at the trial is very voluminous, covering nearly 750 typewritten pages of legal cap, all of which we have carefully read. In view of the great mass of evidence, therefore, we cannot set it forth in this opinion even in condensed form. We shall, therefore, do no more than to state the controlling facts in the course of the opinion.

The case in some of its aspects is unique in that neither the plaintiff nor the defendants, nor the predecessors in interest of either, have based or now base the right to the use of the water in question otherwise than by having used the same for useful and beneficial purposes; that is, no formal appropriation, as since that time has been usual and customary, was ever made.

The plaintiff claims, and he produced much evidence tending to support his claim, that his predecessors in interest, through whom he claims, obtained a prior right in the year 1895, to the use of the water in question to irrigate the land which he owns and upon which he lives; that he succeeded to the rights of his predecessors by purchase in the year 1900, and that said water, during all of the several years since 1895, has been used on the land aforesaid for irrigation and domestic purposes. We remark that while, as hereinbefore stated, the defendants' land lies near the head of the stream, yet they do not claim all of the water which reaches the plaintiff's land lower down the stream. This is due to the fact that

several springs arise between defendants' land above and
plaintiff's land below, the water of which reaches plaintiff's
land and is used by him. The defendants, however, claim all
of the water which flows in the stream flowing over their land
the source of which is above the springs aforesaid. Their
claim is also based upon the alleged actual use by their pre-
decessors in interest to whose rights they succeeded in 1910.
They contend that the water claimed by them was used prior
to the time that plaintiff's predecessors applied it to a bene-
ficial use. The evidence is undisputed that plaintiff's land is
arid and unproductive without irrigation, and that it lies
about 3½ miles westerly from the westerly end line of de-
fendants' land, which extends a considerable distance east-
erly. The plaintiff's land is situated at the mouth of a nar-
row canyon, while defendants' land is up the canyon on higher
ground and in what may be termed a basin, in which, how-
ever, the ground is hilly and broken. The evidence is not very
clear upon the point, but it seems that defendants' land is per-
haps 500 feet higher in elevation than plaintiff's land. Some
is perhaps much higher than that. There is a small stream
called Meadow creek which flows through the canyon in ques-
tion. This creek in passing over defendants' land is divided
into several branches, which, however, unite immediately west
of their land and about 3½ miles east of plaintiff's land. The
water in question is produced from melting snows which fall
during the winter season upon the mountains and hills which
lie in the vicinity and to the east of plaintiff's and defend-
ants' lands. The quantity of the flow in Meadow creek varies
from year to year in accordance with the amount of pre-
cipitation, but, according to the evidence, the flow ordinarily
does not exceed a second foot of water, even in what is called
the high-water season, which, the record shows, occurs dur-
ing April and to the middle of May, and, in some years, per-
haps a little later than that. After the 1st of June the flow
diminishes, and during a portion of the year there is but lit-
tle water in the stream. Indeed, there is evidence to the ef-
fect that at times in the low-water season the water which
flows in the creek and which comes from defendants' land and

to the east thereof does not reach plaintiff's land below. We shall refer to this phase of the case again later.

While defendants' counsel have assigned a number of errors which relate to the rulings of the court during the trial, yet, for the reasons hereinafter stated, there are really no questions of law involved on this appeal. The real controversy arises with respect to questions of fact.

The findings of fact go into great detail and are too long to be set forth in this opinion. It must suffice to say that the court in effect found the issues in favor of the plaintiff and adjudged him to be entitled to all the water of Meadow creek, with the exception that the defendants are permitted to use the water flowing in said creek as it passes through or over their land for a period of twenty-four hours in each week. The court, however, required the use of the said water upon particular parcels of land which are described in the decree and which amount to 24.79 acres. Defendants complain of that portion of the findings and decree; and contend that the findings are not supported by the evidence. While the evidence relating to the quantity of land upon which the defendants' predecessors in interest used water and the time when the same was first used is conflicting, yet there is no doubt that the predecessors of the defendants and through whom they claim did use a portion of the water to irrigate some meadow land at a time prior to the time when plaintiff's predecessors commenced the use of the water on his land lying at the mouth of the canyon below defendants' land. The evidence is, however, to the effect that the defendants' land which lies on both sides of Meadow creek is not adapted for general farming, but that some of it is adapted for pasture and the production of hay for which purpose it has been used for many years. The evidence also shows that small quantities of grain have been raised on defendants' land, and that at least a portion of the water at different times has been used by defendants' predecessors in interest to irrigate some land bordering on said creek for the purpose of producing hay, a quantity of which was produced on said land each year since the 80's. There is a dispute, however, respecting the quantity of water that was used for that purpose, and the amount of

land upon which the same was used, and the time when it was first used thereon. The evidence is, however, clear that plaintiff's predecessors did not commence the use of water on his land until the spring of 1895, while it is equally clear that at least some of the water in question was used by defendants' predecessors on their land for the purposes aforesaid prior to that time. As before stated, the evidence is undisputed that a portion of the water which is claimed by plaintiff and which has been used by him comes from springs which are below defendants' land and hence that portion of the water has never been used by them. Then again, the evidence is clearly to the effect that the water which flows over defendants' land and which finds its way into the different branches of Meadow creek and finally into the main branch of that stream if not interfered with will, except in rare instances hereinafter to be noticed, flow down and reach plaintiff's land, which, as before stated, is used for general farming purposes.

There are some facts in this case which are clearly established. They are, that while the water that is claimed by both the plaintiff and the defendants in a broad sense comes from a common source, yet a portion thereof which reaches plaintiff and which is used by him to irrigate his land comes to the surface below defendants' land, and hence is not and cannot be used by defendants on their land; that after plaintiff's predecessors through whom he claims first commenced to use the water, he, from time to time, increased the area of irrigated land, and has thus also increased the quantity of water he used, all of which is also true respecting the defendants' use of the water; that as to a portion of the water now claimed by plaintiff his right to its use is prior and superior to defendants' rights, and as to a portion of the water claimed by defendants their rights are prior and superior to the plaintiff's rights; that plaintiff's land is better adapted for general farming purposes, and without irrigation is nonproductive, while only a small portion of defendants' land is adapted for pasture and the production of hay while the greater part is adapted for grazing purposes merely; that a small part of defendants' hay land is wet and needs no great amount of water for irrigation to produce hay; that the water in this case is of

such small and variable quantity that it is not practicable to apportion a specific quantity thereof either to the plaintiff or to the defendants, but the apportionment must be made by fixing turns of use or specific periods of time when the water may be used by the plaintiff and by the defendants. In view of the evidence the only matter which presents much difficulty is to determine the precise period of time each of the parties shall have the use of all of the water flowing in Meadow creek which actually reaches their respective lands. That question, as a matter of course, depends upon the extent of the prior rights of the several parties to which we have before referred.

The district court in its findings and decree fixed the period of time by giving the defendants the right to use the water for a period of twenty-four hours in each week, that is, one-seventh of the time, while the plaintiff was given the right to use all of the water reaching down to his land six-sevenths of the time. This arrangement was doubtless based upon the fact that while defendants' predecessors in interest had established a prior right, such right, nevertheless, was a limited one. The court made a personal inspection of the lands in question and all their surroundings, and therefore was in a better situation to determine what weight should be given to the statements of the witnesses where their statements are in conflict than we are. This being an equity case, however, the parties are entitled to our judgment upon all questions of both law and fact. If, therefore, in our judgment the findings and judgment are clearly against the evidence upon any material issue, it is our duty to make our own findings or direct what they should be as to that issue. *Savings Bank* v. *Fox,* 44 Utah, 323, 140 Pac. 660; *Campbell* v. *Gowans,* 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660. Those cases have been followed by this court in a number of other cases to which it is not necessary to refer. While, therefore, it is our duty to yield to the findings of the trial court upon all issues which are sustained by the weight of the evidence and upon all others where we cannot say that they are not clearly against the evidence, yet we are not permitted to do so with respect

to findings which in our judgment are clearly against the evidence, and that is especially so where the evidence is not in conflict. Upon the issue whether the plaintiff's predecessors or those of the defendants first applied at least some of the water which is in dispute to a beneficial use the evidence is not greatly in conflict. That is, the evidence is clearly to the effect that the predecessors of the defendants first applied a certain portion of the water, which is now claimed by plaintiff, to a beneficial use. The district court must have arrived at that conclusion or it would not have permitted the defendants the use thereof one day in seven. The question that confronts us, therefore, is whether, according to the evidence the district court awarded the defendants all that they are entitled to in that regard. After a very careful consideration of the evidence relating to that question we are clearly of the opinion that the district court erred in that regard in two particulars: (1) In awarding to the defendants a smaller portion of the water than they are entitled to; and (2) in limiting them in the use thereof by requiring them to use it upon certain parcels of land only. After making every reasonable allowance in favor of the district court's findings and judgment upon those questions we are clearly of the opinion (a) that the defendants are entitled to and should be awarded the use of all the water which flows in the several branches of Meadow creek, and which reaches their land for at least one-fifth of the time, that is, the defendants should be permitted the use of said water for a period of 24 hours every fifth day; and (b) that in view that their land is so situated that no part of the water used by them will be used where it will not find its way back into the stream again they should not be required to use the water for said period of time on any particular parcel or parcels of land, but they should be permitted to exercise their own judgment respecting the place or places of use. In our judgment the defendants have a prior right to the use of said water for at least the period of time just stated, and in view of that fact they should not be hampered in its use. Nor can such a use prejudice the plaintiff since the evidence shows that all of the land upon which the defendants can use said water, slopes or inclines sharply toward the several

branches of Meadow creek, and hence a large portion of the water used by the defendants will find its way back into said creek which is the source of plaintiff's water supply. We desire to add that in awarding the defendants the use of the water for the period of time aforesaid we have given due consideration to the district court's findings and its superior opportunity to pass upon the weight of the evidence.

It is further contended that the district court erred in requiring defendants to use at least a part of the water awarded to them upon land to which the title still remains in the government. In view, however, that the findings and judgment will be modified respecting defendants' right to use the water during each period of time as before stated, and the defendants will be given the right to use the water at such place or places as to them may be deemed best, nothing further need be said respecting that assignment.

It is, however, further contended that at least in some years, if not in each year during the low-water season, the water flowing in the different branches of Meadow creek is diminished to such an extent that it will not flow all the way down to plaintiff's land, and thus it is contended if the defendants are prevented from using the water neither they nor the plaintiff will receive any benefit therefrom. It is elementary doctrine that where there are two water rights upon a stream, one above the other, and where the water becomes diminished during a certain period of the year, so that it will not flow down and reach the lower user, the upper user may use all of it for the time that it will not reach the lower one. Such at least is the law under ordinary circumstances, to which this case is no exception. In this case it cannot injure the plaintiff if the court will so frame its decree as to permit defendants to use the water flowing in the upper branches of Meadow creek at all times during the extreme low water when the same would not reach the plaintiff. The decree must, however, be properly guarded in that respect so as to prevent any possible clash between the parties. It is quite possible that the parties can agree upon a specific time during which that condition in the decree shall apply,

and if they cannot do so the court may fix the time and conditions in the decree.

It is also insisted that the court erred in receiving incompetent evidence. The case was tried to the court, and the point now under consideration is therefore ruled by the case of *Spratt* v. *Paulson*, 49 Utah, 9, 161 Pac. 1120, where the doctrine is stated in the first headnote in the following words:

"Where a cause is tried by the court, without a jury, the judgment will not be reversed for the admission of incompetent evidence if there is sufficient competent evidence to sustain the finding."

There is another assignment which it becomes necessary to consider, namely, that the court erred in rendering judgment in favor of the plaintiff against the defendants for the sum of $100 damages. The court made no finding of fact respecting the amount of damages that the plaintiff sustained by reason of having been deprived of the use of some of the water claimed by him by the defendants in several of the years immediately preceding the commencement of the action. In a conclusion of law the court, however, found that plaintiff was damaged to the extent of $100, and ordered judgment for that amount, which was accordingly entered. Defendants' counsel contend that in view that there is no finding of fact respecting the amount of damages, the judgment respecting damages cannot prevail. Waiving the question whether the conclusion of law in this case is not a sufficient finding with respect to damages, we are of the opinion that the judgment in that regard for other reasons cannot prevail. It is very clear from plaintiff's evidence that his claim for damages was based upon the theory that he was entitled to use all of the water flowing into Meadow creek and its branches all of the time. We have seen, however, that such was not the fact. In view of that fact there is really not sufficient evidence to sustain a finding of damages for any amount. For that reason, therefore, the judgment must also be modified by excluding therefrom the damages awarded the plaintiff.

While there are a number of other assignments argued in the brief, yet all of them are sufficiently covered by what has been said.

For the reasons stated the findings of fact, conclusions of law, and decree must be, and they are hereby directed to be, modified in the particulars pointed out in the opinion. The cause is therefore remanded to the district court of Box Elder County, with directions to modify its findings of fact, conclusions of law, and decree, so as to make them conform to the terms hereinbefore stated. In all other respects the findings, conclusions of law, and decree are affirmed, and will remain unmodified.

In view of the evidence the question respecting the apportionment of costs arises. In view that the judgment has been modified in favor of the appellant in material and substantial particulars, ordinarily the respondent would be required to pay the costs on appeal. In this case, however, the evidence is undisputed that the defendants deliberately caused the plaintiff to commence an action if he desired the use of the water which comes from the several branches of Meadow creek. They thus forced him to commence this action, or to surrender or forfeit his rights to any of the water just referred to. In view of that situation it is but just and fair that each party should pay his own costs in this court, and such is the order.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.