SAMUEL RUBENSTEIN *vs.* MORRIS HERSHORN & another.

MORRIS HERSHORN & another *vs.* SAMUEL RUBENSTEIN.

Suffolk.   January 14, 1927.— April 18, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract*, Construction, Performance and breach.   *Way*, Private.   *Party Wall.   Deed*, Boundary.

An owner agreed to sell and convey, and a purchaser to buy, "a certain estate situated on Columbus Avenue in . . . Boston, numbered 1845–1847, 1849–1851, 1857–1859, 1861–1863 . . . and comprising four six-family brick dwelling houses, as is," the premises to be conveyed by a good and sufficient deed of the party of the first part, or anyone holding title thereto, conveying a good and clear title to the same, free from all incumbrances, excepting four first mortgages.   There was a further provision in the agreement that if the owner should "be unable to give title or to make conveyance as above stipulated by reason of any cause or defect existing prior to the time of the recording of the deed to" a predecessor in title, the deposit should be refunded and all other obligations as to the conveyance should cease.   The deed to the predecessor in title referred to conveyed five parcels of land with the buildings thereon "in a row of six or seven or more houses in one block," and the buildings were described therein as separated by "partition" walls, the side lines running through the center of the walls.   The four houses referred to in the agreement above described were separated by a house between them owned by some third party.   Each parcel was described in the deed to the predecessor in title as having a boundary "by the middle line of a ten foot passageway . . . Together with the right to use said passageway . . . in common with others entitled thereto, for all purposes for which passageways are generally used in the City of Boston."   The owner refused to recognize either that the partition wall or that the passageway constituted an encumbrance.   *Held*, that

(1) The right of the purchaser to have his payment "refunded" in case of a defect in the title of the land to be conveyed under the agreement was absolute, and could be availed of notwithstanding the fact that he saw fit to assert other or additional reasons for refusing to accept the deed;

(2) Evidence that, before making the contract, the purchaser knew of the passageway and the partition walls, and that they might be encumbrances, was inadmissible;

(3) Evidence outside the agreement was admissible to define the boundaries of the several lots, described merely by numbers in the agreement; such description was found in the deed referred to in the agreement;

(4) That deed made it clear that one boundary of the several lots ran to the "middle line of a ten foot passageway" which was subject to use

by others "for all purposes for which passageways are generally used in the City of Boston";

(5) The right of common use of the passageway was a defect and an encumbrance to the title;

(6) The party walls, the lots being "separated by a house between them owned by some third party," were an encumbrance;

(7) The purchaser was entitled to have his deposit returned.

CROSS ACTIONS OF CONTRACT for alleged breaches of the contract in writing described in the opinion. Writs dated, respectively, April 21, 1925, and May 5, 1925.

In the Superior Court, the actions were tried together before *Hammond*, J. Material facts and rulings by the trial judge are described in the opinion. By order of the judge, there was a verdict for the defendants in the first action, and for the plaintiffs in the second action in the sum of $500. The judge reported the action to this court for determination.

*W. Hartstone*, for Rubenstein.

*H. Kahn*, *M. H. Slobodkin*, & *B. Beerman*, for Hershorn and another, submitted a brief.

PIERCE, J. These cases, tried together, are based upon a written agreement under seal whereby Samuel Rubenstein was to sell and Morris Hershorn and Julius Seif were to buy "a certain estate situated on Columbus Avenue in . . . Boston, numbered 1845–1847, 1849–1851, 1857–1859, 1861–1863 . . . and comprising four six-family brick dwelling houses, as is; together with all landlord's fixtures of whatever kind and nature at present contained in or about the said premises."

The agreement provided that the "Said premises are to be conveyed on or before April 15th, 1925, by a good and sufficient deed of the party of the first part, or anyone holding title thereto, conveying a good and clear title to the same, free from all incumbrances, excepting four first mortgages, on which there is unpaid the aggregate amount of forty-two thousand six hundred (42,600) dollars, which mortgages have matured and on which the present owner is not at present required to make installment payments; and restrictions of record, if any." The deed was "to be delivered and the consideration paid at the Registry of Deeds in which the

deed should by law be recorded, at twelve o'clock noon of the fifteenth day of April, 1925, unless the parties hereto agree in writing to some other time and place."

The agreement contained the further provision that "If the party of the first part shall be unable to give title or to make conveyance as above stipulated by reason of any cause or defect existing prior to the time of the recording of the deed to the Glenway Realty Company, any payments made under this agreement shall be refunded, together with a reasonable fee for the vendees' attorney for his services in examination of title, not exceeding one hundred (100) dollars and all other obligations of either party hereunto shall cease, but the acceptance of a deed and possession by the party of the second part shall be deemed to be a full performance and discharge hereof." The "deed to the Glenway Realty Company" was executed and delivered by Michael F. Kelley to the Glenway Realty Company on April 25, 1921, and was recorded in the registry of deeds for the county of Suffolk, Book 4291, page 3. This deed conveyed five parcels of land with the buildings thereon "in a row of six or seven or more houses in one block"; the buildings on the lots agreed to be conveyed were described as separated by "partition" walls, the side lines running through the center of the walls. Uncontradicted testimony, considered with the deed and the agreement in evidence, shows that there was at least one partition wall separating a building included in the premises to be conveyed from a building on land of a third person. The several parcels were each described in the deed as bounded "Northwesterly by the middle line of a ten foot passageway leading from Bragdon Street to Dimock Street . . . . Together with the right to use said passageway leading from Bragdon Street to Dimock Street, as shown on said plan in common with others entitled thereto, for all purposes for which passageways are generally used in the City of Boston."

On April 14, 1925, the attorney for Hershorn and Seif, in a letter to Walter Hartstone, attorney for Rubenstein, notified Rubenstein that an examination of the title referred to in the agreement of sale and purchase disclosed certain defects

in that title, and alleged more specifically that the examination "discloses a certain passageway right of ten (10) feet located on the Westerly side of the premises and running from Bragdon Street to Dimock Street, half of which is upon land belonging to your client"; and further stated that the examination of title discloses that "In addition to the passageway there are party walls separating the building on Lot A from the building on lot B, the building on lot C from the building on lot D, the building on lot E from the building on lot D, the building on lot F from the building on lot G." The letter also directed attention to the alleged fact that the taxes for the year 1924 were unpaid, that there were second and third mortgages on the premises undischarged of record, and that water liens "have been filed against the property as is shown by Book 4620, Page 1 affecting all the houses, as likewise Book 4621, Page 1, and Book 4641, Page 1." The letter continued: "Your agreement reads 'conveying a good and clear title to the same, free from all encumbrances, excepting four first mortgages, on which there is unpaid the aggregate of $42,600 which mortgages have matured and on which the present owner is not at present required to make installment payments; and restrictions of record, if any.' In view of what I have herein set forth your client is unable to perform his agreement in accordance with the conditions and covenants therein contained and on behalf of my clients I hereby demand the deposit made at the time of the signing of the agreement, namely $500.00 to be returned to me forthwith."

On the same day Mr. Hartstone sent the following letter to the attorney for Hershorn and Seif: "This will acknowledge the receipt of your letter of April 14th concerning the agreement therein referred to. With respect to the several matters therein contained, you will please be advised that my client has arranged to take care of the several matters set forth in your letter which are incumbrances and to have a discharge thereof of record at the time set for passing papers. With respect to the passageway and the party wall, they do not in my opinion, constitute an incumbrance and I have so advised my client. He is ready to perform his agreement in

accordance with the terms thereof and your clients will be held responsible for breach of their agreement."

Title was not passed on or before April 15, 1925, as the agreement provided should be done, and on April 21, 1925, Rubenstein brought an action in contract against Hershorn and Seif to recover damages for the alleged refusal to perform the said agreement by the acceptance of a deed as therein set forth and the payment of the purchase price thereof. On May 5, 1925, Hershorn and Seif began an action in contract against Rubenstein to recover as for money had and received the $500 which they had given him as a deposit under the said agreement. The cases were tried together to a jury in the Superior Court. At the close of the evidence, the plaintiffs in the case of Hershorn *v.* Rubenstein moved for an order directing a verdict in their favor for $500; and in the case of Rubenstein *v.* Hershorn, moved for an order directing a verdict for the defendants. The plaintiff in the case of Rubenstein *v.* Hershorn filed seventeen requests for rulings, and in the case of Hershorn *v.* Rubenstein filed a single request for rulings. The presiding judge refused to grant the requests for rulings in both cases; and Rubenstein as plaintiff and as defendant, respectively, duly saved exceptions.

Thereupon the judge submitted to the jury two questions as follows: (1) "Was the property described in the contract worth in February, 1925, less than $91,500, the contract price?" and (2) "If the jury answer Yes to the preceding question, how much less than $91,500 was the property worth?" "The jury answered the questions as follows: To question number 1 they answered Yes; to question number 2 they answered $2,000. Upon the coming in of the jury's answers to the questions, the court, upon motions for directed verdicts aforesaid, granted the motions, and verdicts were accordingly returned by direction of the court against the objection and subject to the exception of counsel for Rubenstein. The foregoing is all the evidence material to the issue. I now report the case for the determination of the full court upon the following stipulation: If the orders directing the verdicts were right, judgment is to be entered

upon such verdicts. If the court erred in ordering said verdicts or in refusing to grant Rubenstein's requests for rulings or in excluding evidence to which exceptions were taken, as appears in this report, then in the case of Hershorn *v.* Rubenstein, judgment is to be entered for the defendant, and in the case of Rubenstein *v.* Hershorn judgment is to be entered for the plaintiff in the sum of $1,500."

At the trial the attorneys for Hershorn and Seif, in response to a question put by the judge, disclaimed any right to recover back the $500 deposit upon any other theory than that there were defects in the title and that in such event they were entitled to get the deposit back. The evidence offered by Rubenstein to show that Hershorn and Seif knew that the passageway existed outside the fence on the westerly side of the premises, and that there was a separate opening or door in the fence in the rear of each house leading into the passageway on the other side of the fence when they examined the premises before the execution of the agreement of sale and purchase, and also knew that there were partition walls and also knew that the passageway and the walls might or might not be encumbrances, was rightly rejected, even if Rubenstein was able to prove that Hershorn and Seif gave a different reason for not passing papers than the existence of the passageway and party walls. The right of Hershorn and Seif to have their payment "refunded" in case of a defect in the title of the land to be conveyed under the agreement was absolute, and could be availed of notwithstanding the fact they saw fit to assert other or additional reasons for refusing to accept the deed. Moreover, no evidence was offered to prove that there was consideration for the relinquishment of their right or that they were estopped to assert such right by reason of any act or word of theirs upon which Rubenstein had relied to his harm. *Prest* v. *Cole,* 183 Mass. 283.

The agreement contemplated a conveyance of the premises numbered 1845–1847, 1849–1851, 1857–1859, 1861–1863 Columbus Avenue, Boston, and the four six-family brick dwelling houses thereon, and evidence outside the agreement was admissible to define the boundaries of the several

lots. Such description is found in the deed of Kelley to Glenway Realty Company, referred to in the agreement of sale and in this opinion, *supra.* Had the agreement been to sell the described brick dwelling houses, without more, the conveyance would have been satisfied by a deed which conveyed the land under the structures and the land adjacent thereto so far as necessary to its use and commonly used with it, not as an appurtenance but as parcel. *Harvey* v. *Sandwich,* 256 Mass. 379, and cases cited. The deed of Kelley to the Glenway Realty Company makes it clear that the westerly boundary of the several lots ran to the "middle line of a ten foot passageway" which was subject to use by others "for all purposes for which passageways are generally used in the City of Boston." This right of common use manifestly was a defect in the title, in that such use was an encumbrance thereon. The Kelley deed also discloses that the premises may be subject to an encumbrance of party walls, in that the side lines run through the middle of the partition walls which separate the several lots or parcels to be sold, and that they are "separated by a house between them owned by some third party."

Under the agreement to convey "by a good and sufficient deed . . . free from all incumbrances, excepting four first mortgages," Rubenstein was bound to convey a marketable title. *Cashman* v. *Bean,* 226 Mass. 198, 203. *Morse* v. *Stober,* 233 Mass. 223. A marketable title is a title free from reasonable doubt. *Conley* v. *Finn,* 171 Mass. 70. *Aroian* v. *Fairbanks,* 216 Mass. 215. *O'Meara* v. *Gleason,* 246 Mass. 136, 138. There is no direct evidence that a common grantor conveyed the lots which are covered by the agreement to Rubenstein or to his predecessor in title; and conveyed the lot which is between these lots to a third person. If such conveyances came from a common grantor and they were bounded by lines running through the middle of partition walls, it is plain that the grantor granted and retained an easement in such walls. *Pierce* v. *Dyer,* 109 Mass. 374. *Everett* v. *Edwards,* 149 Mass. 588. *Carleton* v. *Blake,* 152 Mass. 176. *Fleming* v. *Cohen,* 186 Mass. 323. A party wall may be an encumbrance. *Cashman* v. *Bean, supra, Bennett*

v. *Sheinwald*, 252 Mass. 23. The right of way over the passageway created a servitude in favor of adjoining owners. *Wetherbee* v. *Bennett*, 2 Allen, 428.

What has been said makes it unnecessary to consider severally the requested rulings. They were refused rightly. In view of the denial of Rubenstein that the common passageway and the partition walls were encumbrances and of his refusal or neglect to remove them before the day set for the performance of the agreement, April 15, 1925, the plaintiffs Hershorn and Seif were entitled to have their deposit of $500 returned to them on that day; and the plaintiff Rubenstein in his action against Hershorn was not entitled to damages for the refusal of Hershorn and Seif to accept the deed if tendered, of which there is no evidence. In every respect the rulings were right and judgment is to be entered on the verdict in each case.

*So ordered.*