SALT LAKE CITY et al. v. TELLURIDE POWER CO. et al. (HYRUM BENNION et al., Interveners).
No. 4874. Decided December 30, 1932. (17 P. [2d] 281.)

608

For opinion on Petition for Rehearing, see 82 U. 622. 26 P. (2d) 822.

*Stewart, Alexander & Budge,* of Salt Lake City, for appellants.

*S. P. Jones, W. A. Fraser, A. W. Watson, C. W. Morse, Van Cott, Riter & Farnsworth, and Ingebretsen, Ray & Rawlins,* all of Salt Lake City, for respondents.

COX, District Judge.

This hearing comes before this court upon an appeal from a judgment rendered by the third judicial district court of Salt Lake county upon supplemental proceedings to recover money paid by the North Jordan Irrigation Company from the other parties to this action, for expenses of operating certain pumping plants at the orifice of Utah Lake, on the ground that the North Jordan Irrigation Company made excess payments under the decree in the above case made in 1901, and supplemental decree made in 1912.

This hearing involves the construction and interpretation of the decree of 1901, in which all the rights of the Jordan river were adjudicated, and of a supplemental decree in the same case made in 1912, in which the ownership of the parties litigant in a pumping plant installed at the orifice of Utah Lake, the right of the parties in the pumps, and the liabilities of each growing out of the ownership and use are determined.

Under the decree of 1901, the court retained jurisdiction of the subject-matter and of the parties for the purpose of all supplementary orders and decrees which may be required to make effectual the rights awarded by the decree, and the court also appointed a water commissioner.

Since 1901 it has been the practice of the president of the several canal companies and the city engineer representing Salt Lake City to meet and discuss matters of joint interest. An employee of the city engineer acted as secretary of this board, which was called the "board of canal presi-

dents." The commissioner appointed by the court reported his doings to the board of canal presidents at intervals.

Since the supplemental decree of 1912, the commissioner and the secretary of the board attempted to apportion to the respective canals the expense of maintenance and operation of the pumps. The secretary undertook to collect the same. All pumps were operated after the 1912 supplemental decree during the years 1915, 1916, 1918, 1919, 1920, 1924, 1925, 1926, and 1927; during the years 1913, 1917, 1914, 1921, 1922, and 1923, gravity flow in the river supplied the water, without the operation of the pumps.

The North Jordan Irrigation Company contends that, during the years 1915, 1916, 1918, 1919, 1920, and 1924, the North Jordan Irrigation Company paid money in excess of the amount which it should have paid, or was required to pay under the terms of the decree of 1912, in the approximate amount of $6,287.97. For the purpose of recovering this money, and to have its rights under the decree construed, and the basis of distribution of pumping costs among the parties definitely determined, this matter was brought before the court upon a supplemental cross-complaint filed by the North Jordan Irrigation Company. After the other companies refused to reimburse the North Jordan Irrigation Company for the alleged excessive amounts paid by it, the North Jordan Irrigation Company has refused to pay any costs of pumping during the years 1925, 1926, and 1927, claiming the excessive amounts were proper offsets against the costs for these years.

Salt Lake City and other canal companies have filed joint counterclaims against the North Jordan Irrigation Company to recover moneys they advanced or paid in pumping plant expenses for the years 1925, 1926, and 1927, which they claim the North Jordan Irrigation Company owes by reason of its failure to make payment of its proportion during the years mentioned. The lower court found the issue against the North Jordan Irrigation Company, awarding judgment for $12,392.80 upon the counterclaims.

The appellant assigns twenty-five errors upon which it relies for reversal and modification of judgment. Boiled down, these assignments of error raise the following questions:

(1) The construction and interpretation of the decrees of 1901 and 1912.

(2) The running of the statute of limitations as a bar to the recovery of money sought by the North Jordan Irrigation Company.

(3) The right to set up a claim barred by the statute against a cross-complaint based upon a right of action arising after the barred action.

(4) The right of a party to claim an interest in water it has used in its canal and run over its ground, and which has passed off as a seepage and run-off water, under the decree referred to in this case.

(5) The right to claim the benefits of a purchased water right formerly used for power purposes for an irrigation purpose. Also to change the place of its use and the places of diversion.

Coming now to the first question, which will dispose of the alleged assignments of error Nos. 3, 5, 6, 16, 18, 21, 22, and 25, this calls for the interpretation of the decrees of 1901 and 1912 with special attention to the decree of 1912 as it relates particularly to the apportionment of costs of pumping water to the various canals, we call attention to the following paragraphs of the decree of 1912 and the findings of fact upon which this decree was based, which are the only parts of the findings and decree necessary to consider in the problem before us:

In subdivision (b) of the third paragraph of the findings of fact, upon which the above decree is based, the court finds:

"(b) And it has been mutually agreed by Salt Lake City, Utah & Salt Lake Canal Company, East Jordan Irrigation Company, South Jordan Canal Company, and North Jordan Irrigation Company, that the cost of maintenance and operation of said pumping plant, after

April 10th, 1912, during any year in which said pumps are in operation, shall be borne by said city and said irrigation and canal companies, in proportion to the quantity of *pumped water used by each of them during said year*, except as hereinafter provided in the fifth conclusion of law and decree." (Italics ours.)

It is the contention of the North Jordan Irrigation Company that, in the apportionment of the costs of running the pumps, where they have been started at the request of three or more, the decree limits the duty to pay to the amount of pumped water actually used by each while the other parties litigant contend that after three require the use of the pumps, the costs are to be borne in proportion to the acre feet of water used by each, regardless of whether part of the water may come from seepage or run-off. To determine this question it is necessary to construe and interpret the decree of 1912, particularly that part above set out. In construing the decree it is proper to refer to the pleadings in the case and the issues joined thereunder, in order to explain and limit the language used in the decree. 34 C. J. 501-794; 1 Black on Judgments, 123; 1 Freeman on Judgments, 43. Referring to the record leading up to the supplemental decree of 1912, we find that one of the propositions submitted to the court in the 1912 proceedings is the following:

"The question of who shall control the starting of the pumps and the method of apportioning the costs and expenses of operating the same and distributing the water so that each party shall pay its equitable proportion of such expenses according to the benefits which each of said parties actually receive from the operation of the pumps."

We find in the abstract of the proceedings of 1912, pages 123 and 124, the following comment by court and counsel:

"Mr. Stewart: Our position is this: That the canal companies, either of them, can have the pumps started, but if they start the pumps they must pay according to the quantity of water they receive in excess of the gravity flow.

"Mr. Dinniny: The City takes the same position as Mr. Stewart.

"The Court: The difference is that the City and the North Jordan take the position that the parties entitled to water should pay the

expense of the operation of the power plant in proportion to the quantity of pumped water used. The South Jordan and the East Jordan and the Utah & Salt Lake take the position that the expense of pumping should be in proportion to the quantity of water received by the several parties, regardless of whether it is pumped water or water flowing by gravity.

·"Mr. Stewart: The position of the North Jordan is: Whenever any of the companies desire a flow of water greater than they get from the gravity flow, we concede to them the right to demand the pumps at once be operated. So long as the North Jordan receives no greater quantity than the gravity flow, they do not consent to the taxing against them of any of the expenses of the operation of the pumps, notwithstanding the fact that when the pumps are operated they not only pump water in excess of the gravity flow, but they pump all the water, including the gravity flow.

"The Court: Every party then does get water from the pumps, but some of them would not have to have the pumps at all if it wasn't for the demand of the other parties."

From the foregoing abstracts of the proceedings before the court in 1912, it therefore appears to this court that one of the questions the court was to determine by that proceeding was whether the cost would be based upon the amount of pumped water used after the pumps were started at the request of three or more parties, or whether or not it was to be based upon the theory that each was to pay for the amount of water actually used by each. That being so, the thing for the court to do is to construe the 1912 decree in the light of the issues as framed. It is only reasonable to suppose that the language used in the decree of 1912 was concise enough and was used with the intent of deciding the issues framed.

Now, let us refer to the language of the court as set out in the findings and the 1912 decree, particularly paragraph (b) of the third finding:

"* * * The cost of maintenance and operation * * * shall be borne * * * in proportion to the quantity of pumped water used by each during the year."

Also the following language of paragraph 3 of the decree:

"* * * In proportion to the quantity of pumped water used by each."

Coming again to paragraph 5 of the decree which refers in part to the same subject-matter and specifically refers to when the pumps are started at the request of three or more:

"* * * Said parties shall pay the cost of pumping the water used by it during the year * * * in proportion to the number of acre feet used by each of said parties respectively."

In construing the decree, it should be construed together as a whole so as to give meaning and force to all of its terms, and, if a reasonable construction can be had which will give force to all of its wording, such a construction should be made. 23 Cyc. 1101. This being so, the only way to give effect to the words "pumped water" would be to construe the two paragraphs together.. This we interpret to mean that all of said irrigation and canal companies shall pay for the operation and maintenance in proportion to the number of acre feet of pumped water used by each. The language of the fifth paragraph referring to the number of acre feet used is limited by the wording of paragraph 3, where the first reference is made to the means of apportioning the cost of maintaining and operating the pumps. Any other construction would treat as surplusage the words "pumped water," and in effect amount to striking them from the decree. This being so, it is the opinion of this court that the North Jordan Irrigation Company, under the decree of 1912, would only be obligated to pay for the number of acre feet of pumped water actually used by it.

The next question to determine is what constitutes "pumped water," and whether or not when three or more of the canal companies start the operation of the pump they can claim such an interest in the water after it has been used in their canals and run over their grounds and lost by seepage and run-off as to enable them to charge that up to the North Jordan Irrigation Company, the lower user, as pumped water. We are of the proved the method of apportionment, nor the apportion-

opinion that, after the water has run through the canals and been used upon the lands of the parties operating the pumps, they have no interest or right in the water after it leaves their lands and finds its way again into the main channel, either as run-off water, or as seepage water, for as soon as it reaches the main channel, its identity is lost, and it again becomes a part of the natural flow.

This court in the appeal of this present case, found in *Salt Lake City* v. *Utah & Salt Lake Canal Co.,* 43 Utah 591, 137 P. 638, held that the East Jordan Irrigation Company and the Utah & Salt Lake Canal Company had no interest in measuring devices below the intakes of their respective. canals, and that they could not be held liable for the cost of constructing dams and the measuring wiers below the intake of their dams. It would naturally follow that the reason for such a holding would be because of the fact that canals which have their intake above the intake of the North Jordan Irrigation Company have no interest in the waters which accumulate in the river channel from run-off, seepage, or other natural means below the intake of their canals.

The next question raised by the errors assigned in this case deals with the running of the statute of limitations, as a bar to the recovery by the plaintiff of the alleged over-advances paid during the years 1915, 1916, 1918, 1919, and 1920. The trial court held that the overpayments made by the North Jordan Irrigation Company during the above years were barred by the statute of limitations. The appellant in its assignments of error, Nos. 11, 15 and 20, contends that the statute of limitations does not apply in this case, upon the theory that the payments made by the North Jordan Irrigation Company were made under protest and pending an adjustment and final determination of the rights of the respective parties, and that the statute could not run until the court fixed the exact amount that each party is to pay; that the commissioner and the board of canal presidents undertook to make apportionments, but that the court has never ap-

ments themselves; that until this is done by the court, the statute of limitations is not applicable.

We are unable to agree with the appellant's position on this question. The court in the decree of 1912 fixed the basis of the apportionment. The fact that that basis was not followed in making the apportionment, or that a greater amount was paid by the North Jordan Irrigation Company than it was required to pay under the basis fixed by the court, would not make the situation any different than where money has been had and received by another. Furthermore, it is a well-settled rule of law that in such cases the statute of limitations commences to run from the time the money was had and received by the party against whom recovery is sought.

The appellant further contends that, even though the statute of limitations were construed to be applicable, the claim of the North Jordan Irrigation Company is urged as a cross-demand and set-off against the claim of the respondents on their counterclaim against the North Jordan Irrigation Company (citing section 6578, Comp. Laws Utah 1917, which provides) :

"When cross-demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

In support of its contention the appellant cites *Utah Commercial & Sav. Bank* v. *Fox,* 40 Utah 205, 120 P. 840, 846, wherein Mr. Chief Justice Frick says:

"In passing upon the statute of limitations the court should bear in mind the fact that while there may be claims preferred by a party which are barred by the statute of limitations in so far as to prevent a judgment in his favor, yet, in so far as to permit him to have such claims applied as compensation for, or as a set-off against his adversary's claims, they may not be barred under the provisions of Comp. Laws 1907, § 2971." (Last section same as section 6578, Comp. Laws 1917.)

The above case was sent back for retrial and is again reported in 44 Utah 323, 140 P. 660. It appeared from facts when the case was first tried that the respondents in that case were suing upon a note and mortgage executed by the appellant Fox. The appellant Fox counterclaimed, setting up that certain notes were given by him to the respondents as collateral security, and that part of the real estate covered by the mortgage had been sold by the respondents. The respondents pleaded the statute of limitations. The facts in this case showed that the claim of the respondents and the claim of the appellants existed at the same time, that is, while the obligation of the appellant to the respondent existed, and before the statute of limitations had run, the respondent received money on the Beck notes which was given as security by the appellant, thereby creating a valid and subsisting claim in favor of the appellant, while the respondent still had a claim against the appellant which was not barred. When this same case appeared before this court for a later ruling, the facts were still the same; the court found, however, that the payments made on the Beck notes were sufficient to pay off the appellant's note to the respondent as of the year 1896. The respondents had, however, sold part of the mortgaged land of the appellant and retained the money to pay the appellant's note, which they found had already been paid by the payments under the Beck notes. The appellant again in the second case had counterclaimed for the excess payments, particularly the amount the respondent had received for the sale of the mortgaged land. The respondent pleaded the statute of limitations. The court held that the appellant could not recover on his counterclaim for the $1,000 respondent got for the sale of the land, because it was barred by the statute of limitations. In this latter case the facts showed that the sale of the land was made after the payments under the Beck notes were sufficient to pay off the original note and mortgage of the appellant. The facts as found which were before this court in both instances in the above case differ. In the present case the appellant the

North Jordan Irrigation Company brings its action for moneys advanced during the years 1915, 1916, 1918, 1919, 1920, and 1924.

With regard to the statute of limitations, this court holds that the payments made in the first five years were barred by the statute of limitations before the claims of the respondents, as set out in their counterclaims, came into existence. In other words, the two claims were not coexistent in point of time; because of the statute of limitations there was no valid and subsisting claim existing in behalf of the appellant for the years 1915, 1916, 1918, 1919, and 1920, when the respondent's claim came into existence in 1925. 37 C. J. 805, 806; *O'Neil* v. *Eppler*, 99 Kan. 493, 162 P. 311, 312.

In the above mentioned Kansas case we find the Kansas statute is identical with our section 6578, except that the period appearing at the end of section 6578 is omitted and the following words added, "or by reason of the statute of limitations; but the two demands must be deemed compensated so far as they equal each other." The court in that case says, at page 312 of 162 P., 99 Kan. 493:

"Under the provision the cross-demands must coexist; that is, they must subsist, in such a way that if one party had brought suit on his demand the other could have set up the demand he held against that of the plaintiff. There must be an overlapping of live demands in point of time. If the demand of one party becomes barred and is not subsisting as a cause of action when the demand of the other party comes into existence, the former demand is not available."

For the above reasons we are of the opinion that the appellant cannot set off its claims for the years 1915, 1916, 1918, 1919, and 1920 against the claims set up in the respondent's counterclaim. This does not apply, however, for the appellant's claim for the year 1924. This would be a proper set-off against the respondent's counterclaim, for the reason that these two claims are coexistent and overlapping in point of time. That is, both

are subsisting claims before the statute of limitations has run against either.

The appellant's next assignment of error refers to the assignment No. 17, which holds that the appellant is estopped from asserting that the payments mentioned in their supplemental cross-complaint were inaccurate or excessive, and is estopped from asserting that all the water diverted at the request of three or more of said owners be charged against it as pumped water. It is the opinion of this court that the finding of the lower court, that the appellants were estopped as above set out, is not supported by the evidence. The essential elements of equitable estoppel have not been shown, in that the respondents have failed to show that they changed their positions for the worse, or that they would suffer a loss as a result of the acts of the appellant in making the overpayment, or in not sooner asserting that it was to pay only for pumped water used by it, instead of the number of acre feet of water used, after three or more of the owners had started the pumps. Pomeroy Equity Jurisprudence, vol. 2, § 805, p. 1463, § 812, p. 1469.

The only thing the respondents set up to support the estoppel is the fact that the appellant participated in the meetings of the board of canal presidents, and received statements of the allotments made for the expense of operating the pumps, and of the contracts for sale of water as set forth in Exhibits E, H, and I, and Exhibit J where part of the respondents bought an additional interest in the pumps in question in this suit. In the first mentioned contract, in which the canal companies are the parties of the first part, the contracts provide that the first party "shall cause the pumps to be operated at the expense of the other contracting parties, provided that if any of the first parties shall require pumped water, then the expense of operating the pumps shall be prorated among those parties using more than their share of the natural flow." (Exhibit G) All the other contracts have similar provisions. There is no

evidence to show that the respondents would not have made these agreements if they had known that the appellant would insist on paying only for the pumped water used. On the contrary these agreements seem to support the appellant's theory that the apportionment of costs was to be based on the amount of pumped water used.

The next question relates to assignment of error No. 8 which refers to the distribution of the water decreed to the Utah Mattress & Manufacturing Company and William Cooper, Jr., in finding that said water since these rights were purchased had been treated and considered as pumped water, and diverted to the North Jordan Irrigation Company. In the original decree of 1901, the Utah Mattress & Manufacturing Company was decreed eleven cubic feet of water per second of time for the operation of its factory, and William Cooper, Jr., was decreed 23 cubic feet of water per second of time for the operation of his flour mill. Both of these rights were for power purposes only. These power rights were purchased by the parties to this action after 1904. Since their purchase these rights have never been used for power purposes. The mere purchase of a power right does not give the purchaser the right to change it to an irrigation purpose without complying with the laws relating to the appropriation and use of water which requires an application to be filed through the state engineer, to get permission for change of use, or change of point of diversion. *Deseret Live Stock Co.* v. *Hooppiania,* 66 Utah 25, 239 P. 479. This being so, the parties could acquire no right to the water for irrigation purposes. The fact that they have used the water as their own would not give them the right to it, unless they comply with the statutes. It, therefore, appears to the court that the finding as set forth in assignment of error No. 8, referring to the mattress company and Cooper rights, is without foundation in fact and contrary to law.

In the matter of assignment of errors Nos. 9, 10, 13, 14, 19, and 23, relating to the counterclaim of the respondent

for moneys advanced between the 1st day of June, 1925, and the 13th day of September, 1927, the court concludes that the findings referred to in these assignments should be so modified that the amounts are based upon the basis of pumped water used by the North Jordan Irrigation Company when operated by three or more of the parties instead of on the basis of acre feet of water used, regardless of whether it is pumped or not.

In view of the foregoing holding of the court, this case is hereby remanded to the district court with instructions to render findings, conclusions of law, and decree in accordance with the views expressed herein.

Costs on appeal to be equally divided among the parties.

CHERRY, C. J., STRAUP and ELIAS HANSEN, JJ., and N. J. BATES, District Judge, concur.

FOLLAND and EPHRAIM HANSON, JJ., being disqualified, did not participate herein.