STEWART LIVESTOCK CO. v. OSTLER et al.

No. 6596. Decided December 13, 1943. (144 P. 2d 276.)

*J. T. Hammond, Jr.,* and *Elias Hansen,* both of Salt Lake City, for appellant.

*Moyle & Moyle,* of Salt Lake City, for respondents.

McDONOUGH, Justice.

Plaintiff brought this action to foreclose a mortgage. Judgment was for defendant and plaintiff appeals.

On October 16, 1920, appellant Stewart Livestock Company, then a corporation, entered into a written contract to sell to respondent J. S. Ostler 11,957.75 acres of land with water rights, in Weber and Morgan counties, together with certain personal property, for the total sum of $103,624.75, on which purchase price a down payment of $25,000 was made by Ostler. At the time the transaction was entered into, appellant company represented that it was the owner of all lands described in the contract except certain lands it was then purchasing from the State of Utah on an installment contract, more particularly described in paragraph "A" of said contract.

The agreement of sale provided that the balance of $78,-624.75 should be paid in installments, the first one of $8,000

to be paid on or before July 21, 1921, and $70,624.75 to be paid in nine principal annual installments of $7,847.11 each, together with interest. Each of said installments was to be evidenced by a promissory note payable on the annual date specified. On payment of the $8,000 installment the seller was to convey to Ostler by warranty deed subject to taxes assessed after 1920, all of the lands described in said contract except the 320 acres mentioned in the contract of purchase with the State of Utah; and Ostler was to execute and deliver to plaintiff a mortgage in the principal sum of $70,624.75 to secure payment of said notes representing the balance of the purchase price. The agreement further provided that the vendor would pay all taxes to and including the year 1920, and would complete payment of its contract of purchase with the State on the 320 acres and perfect title thereto prior to October 15, 1925, and thereupon convey the 320 acres to Ostler. On receipt of such deed, Ostler was to execute a mortgage covering the lands acquired from the State as additional security for the unpaid balance of the purchase price. The vendor also agreed to furnish abstracts of title continued to date of delivery of the deed or deeds, and also covenanted that in case the title proved to be defective to perfect title for the purchaser with due and reasonable diligence.

Ostler paid the $8,000 installment in 1921 and the vendor-appellant company executed and delivered the warranty deed and received back from Ostler and wife a mortgage for $70,624.75 to secure payment of the nine notes aggregating said sum as the balance of the purchase price. It will be observed that those installment notes, and the mortgage given to secure payment of the same, represented the entire unpaid consideration for the purchase of all of the lands, including the purchase price for the 320 acres of State land which plaintiff was then buying on installment contract. At the time of delivery of the deed, Ostler was given an abstract of title which did not cover Section 17, Township 5 North, Range 1 East, Salt Lake Meridian, although

said section was one of the tracts included in the purchase. There is some dispute as to whether Ostler or his attorney received an abstract covering said section 17 prior to the date the last installment note became due.

There is no dispute as to the fact that when the abstract of title to section 17 was delivered it clearly showed that plaintiff had conveyed said section by warranty deed to a third party three years prior to date of the contract of sale with Ostler, and that plaintiff had no title to said 640 acres of land, which was stated by witnesses to be part of the watershed and a "key tract" worth not less than $7 per acre. Both the abstract of title introduced in evidence by plaintiff and the one introduced by defendants show that plaintiff did not have a marketable title to section 17 or any title thereto, and that no title was subsequently acquired. Each abstract shows that the grantee of Stewart Livestock Company conveyed the land to strangers prior to the time plaintiff entered into the contract to sell said land and other lands to Ostler.

The pleadings and evidence indicate that Ostler paid all of the notes as they matured, except $3,357.17 on the ninth and final note which matured in 1930. It is not disputed, that plaintiff did not apply the payments received on the mortgage to complete payment of the contract of sale with the State as to the 320 acres; that plaintiff repeatedly defaulted in payments although it had notice from both the State and Ostler to comply with the contract of sale, and that in 1929 the contract was cancelled by the State Land Board with the result that these lands were never conveyed to Ostler.

Ostler testified that he did not receive the abstract of title to section 17 at the time the abstract covering most of the lands was delivered, and that he did not know that appellant had conveyed to a third party three years before Ostler bought the land from plaintiff; that in 1924 he received a letter from one Charles G. Wallace, record owner of said tract, in which letter said Wallace asserted ownership of

said section; that Ostler quit paying taxes on such tract when he became convinced that he did not own the land; that plaintiff repeatedly promised to get the title straightened out, but did nothing about it other than to suggest that Ostler advance the money to Weber County to procure a tax deed and take credit on the mortgage indebtedness for such advance; and that notwithstanding the promises made to reinstate the contract with the State, plaintiff continually failed to do so, and that Ostler told plaintiff at the time partial payment of the last note was made, that the money was ready for plaintiff as soon as it gave him a good title to section 17 and the lands it had promised to acquire from the State of Utah.

The secretary of appellant company testified that she knew of the defaults in payment on the contract with the State, and she admitted that part of the funds derived from payments on the mortgage notes were used to pay other debts of the corporation and part thereof was distributed among the stockholders; and that she suggested to Ostler that he advance the money to reinstate the contract with the State and take credit for it on the mortgage, and that Ostler agreed to the proposal although he did nothing about it. She testified,

"We knew about this State land, and we knew Mr. Ostler owed us this amount, and we thought one would offset the other, and that is why we were inclined to do it that way."

As to the dispute over failure of plaintiff to make good the title to Section 17 she testified:

"I don't think I knew a thing about it until his payment was due, and I think I wrote to Mr. Ostler, and I think he answered me back and said that there was trouble with the title, * * * and when we fixed that up that he would make the payment and straighten it out."

She further testified to a conversation with Ostler as to section 17:

"I couldn't see why he couldn't pay the taxes and get a tax deed, but he said that wasn't a good deed."

The trial court found that there was a partial failure of consideration, and that plaintiff could not recover in the foreclosure action by reason of the fact that the failure of consideration was in excess of the balance allegedly due at the time Ostler refused to pay the $3,357.17 final payment on the mortgage until or unless plaintiff completed its performance under the contract by furnishing good title.

On this appeal plaintiff attacks the judgment in favor of defendants on several grounds: (1) That the second amended answer does not state a defense. (2) That neither Ostler nor Ostler Land & Livestock Company can plead any offset or breach of covenant in the foreclosure action. (3) That action on any claim asserted by any of the defendants is barred by the statute of limitations. The first and second contentions are somewhat interrelated and will first be considered.

As to the first contention, appellant bases its argument on the premise that the second amended answer in substance is the same as the answer which we formerly held was vulnerable to demurrer. *Stewart Livestock Co.* v. *Ostler et al.*, 99 Utah 240, 104 P. 2d 632. An examination of the second amended answer, however, reveals that defendants severally plead the contract of sale and attach a copy as an exhibit which is incorporated into said answer by reference. That contract shows the duty of plaintiff to furnish certain consideration—good title to section 17, and good title to the 320 acres. The second amended answer also alleges that Ostler executed the notes and mortgage on all of the lands except the lands to which plaintiff covenanted to acquire title and then convey to Ostler; and there are definite allegations which show a partial failure of consideration: (1) Allegations that plaintiff never acquired title to the 320 acres; (2) allegations that plaintiff had no title and never re-acquired title to section 17; and (3) allegations that the property rights and title which Ostler purchased but failed to obtain from plaintiff exceeded by way of loss and damage to Ostler and his grantee more

than the alleged unpaid balance of the note. Thus, the second amended answer clearly shows a defense consisting of a partial failure of consideration on the note and mortgage in an amount in excess of the alleged unpaid balance.

Furthermore, defendants separately plead as an additional defense:

"That defendant, J. S. Ostler, organized the defendant Ostler Land & Livestock Company, and transferred and conveyed to said corporation all of his right, title and interest in and to said contract, 'Exhibit A,' and to all of the above mentioned property, and, in consideration for the transfer thereof to the corporation, received all of its capital stock with the exception of four shares, which four shares were transferred to other parties for the purpose of qualifying them as directors of said company, and that, in fact and in law, the said J. S. Ostler and the said Ostler Land & Livestock Company are one and the same and their interests and rights in this action are identical."

The materiality of such allegation will hereafter be considered. Suffice it to say, at this point, the second amended answer was invulnerable to demurrer.

By way of reply plaintiff attempted a confession and avoidance of the affirmative defenses and claims of offset, but the reply admits the following: (1) The execution of the aforesaid contract and the covenants on the part of plaintiff. (2) That Ostler made all payments on the mortgage at the times stipulated except the balance of $3,357.17 which Ostler refused to pay. (3) That plaintiff did not complete its contract to purchase from the State the 320 acres and that it never conveyed the 320 acres to Ostler.

By way of avoidance, plaintiff does not plead that it actually invested Ostler with title to the 960 acres, but it merely alleges that it gave Ostler a deed to section 17 and that he was never ejected therefrom and that by paying taxes for 7 years he could have acquired title by adverse possession. Such is the premise on which plaintiff bases its conclusion that Ostler was not damaged and suffered no loss or failure of consideration. Plaintiff does not deny that it failed to convey good title to section 17. It appears to take

the position that upon delivery of the warranty deed the contract of sale was no longer executory, but fully performed and executed and that Ostler and his grantee were thereby estopped to rely on any of the covenants in the contract of sale, although no facts showing any estoppel are pleaded. To illustrate that the contract was executory and not fully performed upon delivery of the deed, we need only refer to some of its provisions:

> "The seller hereby agrees to sell, and by statutory form of warranty deed, convey, and the buyer hereby agrees to purchase, the lands and water rights hereinafter described."

Also,

> "The seller hereby agrees to furnish abstracts of title to its said lands brought down to the date of the execution and delivery of its said deed or deeds, and will deliver said abstracts concurrent therewith; and if the title proves defective, the seller will perfect said title by due and reasonable diligence."

If the deeds were to be delivered at the same time as the abstracts of title, little or no opportunity to examine such abstracts of title beforehand might be afforded. The fact is that the mortgage was to be delivered concurrently with the delivery of the deed, and by the language used the parties indicated an intention to allow an examination of the abstracts of title after the deeds were delivered, with a covenant on the part of the seller to "perfect said title by due and reasonable diligence" if defects in title were discovered. The unpaid balance of the purchase price evidenced by a purchase-money mortgage appeared to be sufficient security for performance by the seller.

"To perfect the title" like the phrase "to straighten out the title" means to render the title marketable, and to secure for the purchaser a good title. *Johnston* v. *Cox*, 114 Fla. 243, 154 So. 206. Even in the absence of an express covenant to perfect title or cure defects which might be discovered in the record title, an agreement to convey "by a good and sufficient deed * * * free from all encumbrances, excepting four mortgages," has been held to require

the vendor to convey a marketable title. *Hershorn* v. *Rubenstein*, 259 Mass. 288, 156 N. E. 251, 253. See also *Morse* v. *Stober*, 233 Mass. 223, 123 N. E. 780, 9 A. L. R. 78. An unqualified agreement to convey title has also been held to import that a title will be conveyed of which the vendee cannot lawfully complain. *Heaton* v. *Nelson*, 69 Colo. 320, 194 P. 614. See also *Kenefick* v. *Schumaker*, 64 Ind. App. 552, 116 N. E. 319 at page 323.

The covenant to convey title by statutory form of warranty deed amounts to a covenant to give a "good and sufficient deed," which necessarily implies that title shall be marketable. When read in connection with the covenant to "perfect said title" in the event title proved to be defective, it is apparent that the parties contemplated that the mere delivery of a warranty deed would not discharge the obligations of the contract of sale. It being determined that under the contract of sale the vendor's obligations were not fulfilled by mere delivery of the warranty deed, we need not consider appellant's contention to the effect that there could be no breach of the covenant of warranty while the grantee's possession remained undisturbed by eviction.

The allegation that Ostler might have acquired title by adverse possession by paying taxes for seven consecutive years is not a defense to the plea of breach of contract of sale, for title acquired by adverse possession through acts of the grantee is not a compliance on the part of a grantor with a covenant to "perfect the title." Furthermore, the mere fact that the grantee might actually prevail in litigation against the record owner or against any other person, would not satisfy the requirement that the grantor convey a marketable title. *Owens* v. *Jackson*, Tex. Civ. App., 35 S. W. 2d 186, 187;*Clark* v. *Ray*, Tex. Civ. App., 96 S. W. 2d 808, 812-813. See *Adams* v. *Whittle*, 101 Fla. 705, 135 So. 152. The vendee is entitled to the very consideration for which he bargained and gave value—good

title to the land, where the agreement is to convey title by warranty deed without qualifications.

Ostler certainly had no duty under the covenants of his contract to accept anything less than a marketable title, and there is no sufficient allegation that either he or his grantee waived performance of those provisions to "perfect said title," nor even that Ostler was aware ■ of the fact that plaintiff previously had sold and conveyed section 17. He was under no duty to assume any of the risks or burdens of attempting to divest the record owners of their title, either by purchase or by adverse possession. Upon discovery of the fact that title to section 17 was vested in third parties, had Ostler bought their record title, plaintiff could not be heard to refuse Ostler a credit on the purchase-money mortgage to the extent of funds necessarily expended. The reply of plaintiff discloses a purpose of using a foreclosue action to unjustly enrich itself, for it admits a partial failure of consideration; yet it seeks to have plaintiff escape its duty to give credit or offset in the amount of such failure of consideration.

The second proposition urged by appellant is that neither J. S. Ostler nor his grantee, Ostler Land & Livestock Company, can plead any breach of contract or damages, as an offset or counterclaim in a foreclosure action in which no deficiency judgment is sought. The request or ■ absence of request for a deficiency judgment does not determine whether or not a defendant may urge any defense which he otherwise might have. Foreclosure is statutory. Foreclosure proceedings on a mortgage securing a note in default must be conducted in accordance with the statutes, Sec. 104-55-1 to 9, U. C. A. 1943. It is necessary to have the court ascertain what sum of money, if any, is due and owing on the note and mortgage before the court can properly issue an order of sale to liquidate the debt through sale of the security. If it is determined that the mortgagee has received funds sufficient to extinguish the mortgage indebtedness, and which funds should have been so applied,

the mortgagor has a right to have such funds applied to the payment of the mortgage note as of the date when they should have been so applied. If the mortgagee has received funds for application on the mortgage debt or has failed to disburse the full amount of money for which the note was given, so that if the funds were properly credited there would be no unpaid balance, the mortgagee is not entitled to foreclosure for all rights to the security have been discharged by payment or credit, and the mortgagee has a duty to release the mortgage.

Our code permits a defendant to plead any matter or defense, legal or equitable, by way of answer or counterclaim, which will defeat recovery by plaintiff, in whole or in part. Sec. 104-9-1, U. C. A. 1943. This court has held that in foreclosure actions a mortgagor may plead special defense by way of offset and also plead counterclaims. As stated in *Stephens* v. *Doxey,* 58 Utah 196, at page 211, 198 P. 261, at page 267:

"However, as plaintiff took the mortgages with notice of the contract entered into between defendant and the contractor, W. J. Stephens, the defendant, upon proper pleadings and showing made, should be permitted to offset against said notes and mortgages any and all damages she may reasonably have sustained by reason of the failure of the said contractor to erect and complete the building substantially in accordance with the contract, or as reasonably contemplated by the parties to it."

The cases cited by appellant for the proposition that no offset nor counterclaim can be asserted in a foreclosure action, are not in point. For example, appellant cites *Zion's Savings Bank & Trust Co.* v. *Rouse,* 86 Utah 574, 47 P. 2d 617. In that case it was held that the fact that a mortgagor has on deposit a sum of money with the mortgagee bank, does not give the mortgagee an option to apply the fund to satisfy the mortgage debt in whole or in part, for the reason that the statutes, Sec. 104-55-1 and 2, require a mortgagee to first exhaust the security before the mortgagee can claim the right to levy on any other assets of the debtor. The case

definitely points out that the debtor could require the mortgagee to offset any funds of the debtor on deposit with the mortgagee to either reduce or extinguish the mortgage debt, but such right to require an offset is vested in the mortgagor, not in the mortgagee.

Section 104-9-1(2), U. C. A. 1943, authorizes an answer to contain "A statement of any new matter constituting a defense or counterclaim." Section 104-9-2 defines a counterclaim:

"The counterclaim mentioned in the next preceding section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action:

"(1) A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action.

"(2) In an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

Patently, the contract, which the appellant failed in part to perform, was connected with the mortgage transaction, for the mortgage was executed in accordance with the specific terms of the contract. Furthermore, the mortgage covered the consideration or purchase price for 960 acres of land, title to which plaintiff never actually conveyed to Ostler. A counterclaim could have been asserted by defendants under either of the two subdivisions. However, defendants in their second amended answer made their cross-demands and claims for offsets for the partial failure of consideration, not as a counterclaim, but as affirmative defenses to defeat recovery on the mortgage note and mortgage. Sec. 104-9-4, U. C. A. 1943, provides:

"When cross demands have existed between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated so far as they equal each other, and neither can

be deprived of the benefit thereof by the assignment or death of the other."

But appellant, as hereinbefore indicated, argues that the grantee of a mortgagor who takes title "subject to the mortgage" cannot raise the same defenses which the mortgagor might plead if the mortgagor had not conveyed. Cases are cited to the effect that a grantee who assumes and agrees to pay the mortgage cannot defend on the ground that the mortgagor did not receive the stipulated consideration, or that the mortgage itself was invalid as between the mortgagor and mortgagee. In this case there was no assumption of the mortgage debt. The bargain and sale deed from Ostler to his corporation recites:

"This conveyance is made subject to all mortgages, tax sales, tax liens, and other incumbrances thereon."

Indeed, there is no specific reference to the mortgage in controversy. No evidence was introduced to show that there was any deduction from the purchase price for the conveyance to the corporation for any alleged unpaid balance on the mortgage in question. The fact is that Ostler received all except four shares of the corporate stock, so no contention could be made that there was any occasion to deduct the amount of the alleged balance of the mortgage indebtedness from the "purchase price," no money having actually passed from the corporation.

We have heretofore expressly held that the grantee of the mortgagor can raise the same kind of defenses which the mortgagor could make. As announced in *Mickelson* v. *Anderson*, 81 Utah 444 at pages 451, 452, 19 P. 2d 1033, at page 1036:

" * * * When the mortgagor has conveyed his interest in the property, * * * the legal title vests in the grantee, * * * who then stands in the mortgagor's place in regard to the mortgaged property and the mortgage lien, with the same rights as had his grantor to contest the validity and extent of the liens and to object

to the sale. Brunswick Realty Co v. University Inv. Co., 43 Utah 75, 134 P. 608  *  *  *."

In *Brunswick Realty Co.* v. *University Inv. Co.*, 43 Utah 75 at pages 86, 87, 134 P. 608, at page 612, we said:

" *  *  * It follows, therefore, that, unless a purchaser for some legal or equitable reason has estopped himself from protecting the interest he has acquired in incumbered premises, we can see no good reason why he should not be permitted to protect his interest by contesting any illegal claim that may be sought to be enforced against it. It the absence of proof, therefore, that the appellant had deducted the amount claimed unpaid upon the mortgage in question from the purchase price, the finding of the court that it was liable for the full amount found due upon the mortgage, including the $4,400, cannot be maintained."

In a case where the grantee takes credit on the purchase price for the amount of the alleged mortgage indebtedness remaining unpaid, he is benefited to the extent of such credit and he may be estopped to deny the validity of the mortgage in a foreclosure action unless the mortgagor who has the right of defense either authorizes the grantee to defend or assigns to the grantee his causes of action. The same may be true where the mortgagor describing a certain mortgage, specifies in the deed of conveyance, that it is "subject to said mortgage, which the grantee assumes and agrees to pay." However, even in those jurisdictions where as a general rule a grantee of the mortgagor who takes subject to the mortgage may not ordinarily challenge the validity of the mortgage or allege want of consideration, if it appears that there was no credit on the purchase price for the amount of the mortgage indebtedness alleged to exist, there may be no estoppel invoked against the grantee in the foreclosure action. In *Magie* v. *Reynolds*, 51 N. J. Eq. 113, 26 A. 150 at page 155, it was held that where the mortgagor conveyed land to a corporation subject to a certain mortgage in consideration for receipt of nearly all of the stock of such corporation which he was instrumental in organizing, the

corporation may set up any defense which could be asserted by the mortgagor even if the mortgagor fails to defend.

It is in connection with the question of the right of the respondent corporation as grantee of defendant Ostler, to interpose the defense of partial failure of consideration for the mortgage, that the allegation concerning the relationship between the two—set out hereinabove in the discussion of plaintiff's demurrer—becomes important. It may well be conceded that the sole owner of a corporation may not, as suits his convenience, don or doff the cloak of corporate entity; but conceding that he may not, does not confess that the allegation in question is immaterial. Such allegation that Ostler organized the corporation and in return for the conveyance of the mortgaged premises and property received all of the corporate stock except four qualifying shares, in effect avers that the grantee-corporation was not the beneficiary of a deduction from the purchase price equal to the amount of the mortgage debt. Hence, such grantee would not be estopped from interposing the pleaded offset. *Brunswick Realty Co.* v. *University Inv. Co.*, supra.

The evidence discloses that Ostler conveyed practically everything he owned to his corporation, and he owned all except four shares of the corporate stock. Assuming that the general assignment of the causes of action on the contract between plaintiff and Ostler, to the Ostler Land & Livestock Company which was introduced in evidence, was not actually delivered to said corporation until after commencement of the foreclosure action as contended by appellant, nevertheless, under the authorities cited, the defense of partial failure of consideration was available to the corporation, and the evidence adduced supports the finding of the trial court on such issue.

It must be conceded by appellant that if the mortgagor made payments on the mortgage prior to the time he conveyed subject to the mortgage, the grantee should not be

estopped to show that the mortgagee failed to properly give credit for the same, or to demand application of such payments to the mortgage debt as of the date when they should have been applied. Under our statutes, the mere fact that a grantee takes title "subject to the mortgage" does not operate to preclude the right to plead any fact by way of defense, the legal or equitable effect of which is to show that plaintiff is not entitled to recover or to have an order of sale for as much as plaintiff claims. If a defense properly proved shows that there is nothing actually due on the mortgage, the mortgage should be released, for there is no right of foreclosure still vested in the mortgagee. Ordinarily, a defendant is entitled under our statutes, to raise any issue or assert any defense which will operate to defeat the plaintiff's claim. *Hayden* v. *Collins*, 90 Utah 238 at page 243, 63 P. 2d 223 at page 225. See also *Tremonton Inv. Co.* v. *Horne*, 59 Utah 156, 202 P. 547.

In this case plaintiff company became a defunct corporation, and it also became insolvent. If either Ostler or his grantee had instituted any action to compel specific performance of the contract or to recover damages for nonperformance on the part of Stewart Livestock Company, unless a credit or offset on the mortgage had been established by judgment or decree in such proceeding, there is little likelihood that such judgment and decree would have been satisfied except by way of levy on the mortgage. Neither Ostler nor his grantee could possibly risk payment of the balance claimed by plaintiff and ever hope to recover back anything for nonperformance on the part of plaintiff, or be indemnified for the partial failure of consideration on the mortgage. Ostler paid all except $3,-357.17 which plaintiff claimed was due on the mortgage, and he informed plaintiff that the balance was ready any time plaintiff gave him title to the 960 acres. Ostler was under no duty to make any formal tender or deposit the money in the bank to be released if and when plaintiff performed the terms of its contract of sale. By its continued

failure to perform and by diverting the funds collected on the mortgage as a liquidating dividend to its stockholders, plaintiff not only failed to apply the mortgage collections to procure title to the 960 acres, but for all practical purposes it incapacitated itself from ever performing its covenants to "perfect the title" to said acreage.

The third proposition urged by appellant, that offset or recovery on the cross-demands of defendants was barred by the statute of limitations applicable to actions on written instruments, must likewise fail. Defendants did not seek any judgment other than the defeat of plaintiff's claims. Though a claim may be barred by the statute of limitations insofar as the right to recover a judgment is concerned, such claim may be set off against an adversary's claim. *Utah Commercial & Savings Bank* v. *Fox*, 40 Utah 205, 120 P. 840; *Cox* v. *Dixie Power Co.*, 81 Utah 94, 16 P. 2d 916, 922; and see also *Salt Lake City* v. *Telluride Power Co.*, 82 Utah 607, 17 P. 2d 281 at pages 285, 286. In the last cited case we held that where the claims are co-existing and overlapping in point of time, one may be offset against the other and not be barred by the statute of limitations.

In 1930 when Ostler paid all but $3,357.17 of the last note and stated that he was ready to pay the balance when plaintiff gave him good title to the 960 acres of land, title to which was supposed to have been perfected in 1925, and he demanded performance on the part of plaintiff, it certainly evidenced the fact that the cross-demands for performance existed at the time when plaintiff claims the mortgage became finally due and payable in full. However, since there was a partial failure of consideration on the mortgage itself, that matter could be asserted at any time in any action brought to foreclose the mortgage.

A creditor, who takes security for payment without delivering the full consideration which he represented and agreed he was giving, cannot be heard to plead the statute of limitations to a plea of partial failure of consideration, for such defense amounts in effect to

a claim on the part of the alleged debtor that the creditor has wrongfully failed to give credit for the amount of the deficiency in consideration which he had a duty to do, or that the creditor has wrongfully failed to deliver part of the consideration which he now sues to recover in whole or in part.

There is sufficient evidence in this case to justify the trial court, wholly apart from the question of delinquent taxes, in finding that the partial failure of consideration as of 1930 when the mortgage allegedly became payable in full, amounted to a sum in excess of the alleged balance, and that plaintiff has no standing in court to recover on an instrument of indebtedness in an amount which it failed to deliver to the mortgagor, and that the mortgage was in fact paid in full by crediting thereon as an offset the amount of the deficiency in consideration. The judgment of the lower court is therefore affirmed. Costs to respondents.

WOLFE, C. J., and LARSON and MOFFAT, JJ., concur.

ELLETT, District Judge (dissenting).

I dissent. The prevailing opinion holds contrary to the unanimous decision heretofore handed down in this matter on the former appeal but does not attempt to overrule that decision. 99 Utah 240, 104 P. 2d 632. In my opinion, the former decision is correct and should not be overruled. The contract under which the defendant Ostler purchased the land required the plaintiff to give a warranty deed to all of the land except the 320 acres belonging to the State of Utah, upon the payment of the $8,000 installment. Upon giving the warranty deed, the contract was fulfilled, and any rights that the defendant thereafter would have against the plaintiff would be upon the warranty. His possession was never interfered with by any adverse claimant, and his damages, therefore, could only be nominal.

If the law permits an offset of an unliquidated claim against a mortgage foreclosure, contrary to the holding of

this court on the former appeal, then that offset should have been exercised by the defendant Ostler against some of the notes that he was paying during the period of the running of the statute of limitations following the transfer of the land by warranty deed; and I do not understand that he might have offset, against the last note he was to pay, a claim for damages that had been outlawed several years before the note in question became due.

The defendant had an option of rescinding the contract or of suing for damages for the breach of warranty, but he did not exercise either of these rights. Instead, he elected to allow his claim to become stale before the debt he attempts to offset against was even due.

Before cross-demands are deemed to be compensated, it must appear that they were so related between persons and under such circumstances that if one person had brought an action against the other, a counterclaim could have been set up. Now, if at any time prior to the maturity date of the last note in question here the defendant had sued the plaintiff for a breach of warranty, it is quite apparent that the plaintiff herein could not have offset and defeated this claim by offering the unmatured note as a counterclaim or offset thereto.

The second amended answer under which this case was tried differs only in two particulars from the amended answer which this court on a former hearing held did not state a defense in favor of any defendant. These differences are:

(1) It is alleged that the second mortgage of the First National Bank of Salt Lake City has been paid and discharged and that party no longer has any interest in this case.

(2) That the defendant J. S. Ostler organized the defendant Ostler Land & Livestock Company and transferred and conveyed to said corporation all of his right, title, and interest in and to the contract for the purchase of the prop-

erty and to all of the property which is subject to be foreclosed in this action; and in consideration for the transfer thereof to the corporation of said property he received all of its capital stock with the exception of four shares, which four shares were transferred to other parties for the purpose of qualifying them as directors of said company, and that in fact and in law the said J. S. Ostler and the said Ostler Land & Livestock Company are one and the same and their interests and rights in the action are identical.

The first change does not justify the court in holding that the second amended answer states a defense where the amended answer failed to do so, and the only question that should be considered in the determination of this appeal is whether or not the allegation that the defendant J. S. Ostler and the Ostler Land & Livestock Company are one and the same and that the corporation is the alter ego of J. S. Ostler states a defense where no defense is stated without this allegation.

One of the most distinctive attributes of a corporation is its existence as a legal entity distinct and separate from the stockholders who compose it. It is a distinct entity, an artificial person, and as such is capable of suing and being sued, of contracting, of acquiring, owning, and disposing of property within the objects of its creation, the same as a natural person, and one may deal with it respecting its corporate property the same as with an individual owner. This is because the law has endowed it with a legal existence as a juridical person, independent of any or all of its stockholders. For instance, if A owns one-tenth of the capital stock of a corporation, he by no means owns one-tenth of the corporate property. True, his interest is directly linked with the interests of the corporation because he prospers in the form of dividends only as the corporation prospers. Neither would A and all other stockholders of the corporation jointly own the assets of the corporation. These assets are owned by the corporation solely. Title is vested in the corporation and not in the stockholders.

It is elementary that if a corporation breaches its contract the stockholders may not be sued therefor. It is also elementary that if A, B, and C own all of the stock of the X corporation and also own all of the stock of the Y corporation, the X corporation and the Y corporation are not one and the same but are separate corporations.

In the case of *Baldwin* v. *Canfield*, 26 Minn. 43, 1 N. W. 261, 276, one King, the owner of all the stock in a corporation, executed and delivered a deed of certain real estate owned by it. An action was subsequently brought to have the deed declared void as a cloud upon the title of the corporation. It was held that the action would not lie, that the deed was void upon its face, and therefore not a cloud upon the title, being the deed of a total stranger to the title. Also in *Parker* v. *Bethel Hotel Company*, 96 Tenn. 252, 34 S. W. 209, 31 L. R. A. 706, the same result was reached when all of the stockholders individually joined in a deed of the corporate property.

The case of *Button* v. *Hoffman*, 61 Wis. 20, 20 N. W. 667, 668, 50 Am. Rep. 131, was a case where the sole owner of all of the capital stock of a corporation attempted to maintain an action of replevin to recover property unlawfully taken from the corporation. The Supreme Court of Wisconsin decided that he could not maintain the action since title was not in him but was in the corporate entity. Judge Orton in the course of the decision said:

"The owner of all the capital stock of a corporation does not, therefore, own its property, or any of it, and does not himself become the corporation, as a natural person, to own its property, and do its business in his own name. While the corporation exists he is a mere stockholder of it, and nothing else."

There are cases which permit the piercing of the corporate entity when that corporate entity is employed as a shield to defraud creditors, to evade an existing obligation, to circumvent unfairly a statute, to achieve or perpetuate illegal monopoly, or generally to protect knavery and dishonesty.

When such circumstances are made to appear by the person who has been wronged by the shield of corporate entity, the courts will draw aside the veil and will regard the acts of the flesh and blood human associates instead of permitting them to work through the corporate entity and will compel them to do justice under the circumstances.

It has likewise been held that where a corporation is so organized that its affairs are so conducted as to make it a mere instrumentality of another corporation, its separate existence as a distinct corporate entity may be ignored; but in no case that the writer has been able to find have the organizers and stockholders of a corporation been permitted to hide behind the screen of corporate entity when it suited their purpose and to take off their mask and reveal themselves in their flesh and blood when it did not.

Since there are no new issues raised by the second amended answer that were not heretofore determined on the former appeal to be no defense against the mortgage foreclosure, and since the defendant J. S. Ostler may not show that he and the Ostler Land & Livestock Company are one and the same person, it is apparent that the former appeal is decisive of the questions presented here. The demurrer to the second amended answer, on the ground that the said second amended answer does not state an available defense, was well taken and should have been sustained. The judgment should be reversed and the cause remanded to the District Court with directions to sustain the demurrer to the second amended answer without leave to amend.

WADE, J., being disqualified, did not participate herein.