LILLIAN C. RICHARDS, executrix, & others[1] *vs.* SAVEWAY OIL COMPANY, INC. & others.[2]

Worcester. February 12, 1974. — August 12, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Equity Jurisdiction,* Specific performance. *Contract,* Construction, Performance and breach, For sale of real estate, For purchase of corporate stock, Parties. *Corporation,* Corporate entity. *Evidence,* Extrinsic affecting writing. *Interest.*

A warranty in a stock transfer agreement that the purchasers, who had also bought gas stations from the seller, would own the equipment therein "free and clear of all liens and encumbrances"

---

[1] Leo C. M. Deschenes, special administrator, Lillian C. Richards, individually, Franklyn A. Sweet, and Marvo Oil Co. Inc.

[2] Sure Oil & Chemical Corporation, Bronson A. Fargo, and Lawrence K. Miller.

was not overcome by the knowledge of the purchasers' attorney, who had drafted the agreement, that the equipment was owned by a lessor and not by the purchasers. [516-517]

A warranty by the seller of gas stations containing leased equipment not owned by it that the seller "owns all the property . . . and will at the time of sale . . . own said property free and clear of all encumbrances" was a warranty of title and not merely that the purchasers should have the exclusive right to use the equipment for the duration of the leases. [518-519]

Purchasers of realty, who promptly informed the seller of its breach of warranty upon learning thereof, were not precluded from complaining about the seller's breach because they had learned of it by reason of their own breach of leases of equipment thereon owned by a third party. [518-519]

Where, as a part of a unified transaction, sellers of all the capital stock of a corporation to a second corporation entered into an agreement to sell certain real estate to the first corporation, the sellers' obligation to remedy a breach of warranty of the real estate agreement ran to the second corporation, although it was not a party to that agreement. [519]

Absent an agreement to the contrary, a purchaser in possession of real estate is obligated to pay the seller interest on the unpaid purchase price of the real estate; the seller is not entitled to receive rent simultaneously. [519-520]

PETITION IN EQUITY filed in the Probate Court for the county of Worcester on February 12, 1969.

The case was heard by *Wahlstrom, J.*

*Phillips S. Davis* for the defendants.

*Philip J. Murphy* for the plaintiffs.

ARMSTRONG, J. The defendants have appealed from a final decree of a Probate Court which ordered them specifically to perform part of a contract for the purchase and sale of certain real estate by paying the plaintiffs $106,000 plus interest. The evidence is reported, and there is a report of material facts.

The property which is the subject matter of this dispute consists of three parcels of land, two located in New York and the other in New Hampshire. By the terms of a purchase and sale agreement executed in 1966 the defendant Saveway Oil Company, Inc. (Saveway), agreed to purchase from the plaintiffs those parcels, together

with three other parcels located in Massachusetts, certain specified personal property and certain lease interests. It was agreed that the purchase price of the out-of-State parcels was $106,000. The purchase and sale agreement was executed in accordance with the requirements of, and on the same day as, a second agreement (stock-transfer agreement) under which all the capital stock of Saveway was sold by the plaintiffs to the defendant Sure Oil & Chemical Corporation (Sure).

Shortly after those agreements were executed Sure, through its new wholly owned subsidiary, Saveway, took possession of all the real and personal properties listed in the agreements and began to operate the businesses (gasoline filling stations) at the several sites. However, when deeds to the properties were tendered to Saveway by the plaintiffs, the attorney for Saveway and Sure responded that the defendants were encountering difficulties in arranging for financing for the purchase of the real estate and asked for additional time to procure financing. Sure paid the plaintiffs $1,200 per month until March, 1968; the judge found that the plaintiffs, although accepting such payments, specifically reserved all their rights under the agreements.

By March of 1968 the defendants had arranged the necessary financing for the Massachusetts real estate, and Saveway purchased those three parcels for $94,000 as provided in the purchase and sale agreement. The defendants again asked for more time to arrange financing for the acquisition of the three out-of-State parcels. The monthly payments made by Sure to the plaintiffs were reduced to $600. Again, it was found, the plaintiffs specifically reserved their rights under the agreements.

Late in 1968 the officers of Saveway and Sure learned that certain equipment located at two sites in Lowell which Saveway operated as a lessee were, by the terms of the pertinent leases, owned by the lessor (not a party to this action) rather than by Saveway. Under the terms of

the stock-transfer agreement, however, the plaintiffs had expressly warranted that Saveway would own the equipment in question "free and clear of all liens and encumbrances" at the time of the transfer of the Saveway stock. After effecting a termination of the Lowell leases with the lessor, Saveway then refused to go forward with its obligation to purchase the out-of-State parcels from the plaintiffs unless an adjustment of the purchase price should be made. The plaintiffs did not agree to such an adjustment, and instead on February 12, 1969, filed the present bill in equity seeking specific performance and other relief. The defendants answered that they were "ready, willing and able to complete the transactions" but asserted in effect that the plaintiffs' alleged breach of warranty necessitated a deduction from the purchase price.

The judge ordered specific performance and refused to order the deduction. It appears that the refusal was predicated on two grounds, neither of which was, in our opinion, sufficient. The judge found that the stock-transfer agreement was drafted by the defendants' attorney, who was aware of the provisions in the Lowell leases which reserved to the lessor, contrary to the plaintiffs' warranty of ownership by Saveway, the equipment in question at the Lowell sites.[3] The judge impliedly found that the defendants were chargeable with the knowledge of their attorney. Such knowledge, however, does not overcome the warranty. In this respect the case before us is analogous to those holding that a seller must convey a title in accordance with the terms of a purchase and sale agreement and the fact that the buyer may have actual or constructive knowledge of an existing encumbrance or other defect in the seller's title is irrelevant. The terms of the written agreement are controlling in such circumstances. *Downey* v. *Levenson,* 247 Mass. 358, 364

---

[3] We note that there is no evidence of fraudulent intent in the preparation of the purchase and sale agreement.

(1924). *Rubenstein* v. *Hershorn*, 259 Mass. 288, 293 (1927). *Siegel* v. *Shaw*, 337 Mass. 170, 172 (1958).

The second ground for the judge's refusal to order a deduction was his interpretation of the sellers' warranty of ownership. The warranty provided that "Saveway Oil Company, Inc. owns all the property listed in Schedule 'E' and will at the time of sale of the Saveway stock to the Buyer own said property free and clear of all liens and encumbrances." The judge interpreted that warranty[4] to mean that "the buyers were seeking and receiving assurance that . . . [they] would receive an exclusive right to use the equipment at the various stations for the duration of the leases unhampered by any right of another to remove the equipment prior to the termination of the leases." We are of the opinion, however, that the language of the warranty is clear and unambiguous, and that the interpretation placed upon it by the trial judge strains its meaning. The warranty was one of title to all personal property listed in Schedule "E", not one of exclusive use of such property. Our construction is supported by the fact that the personal property enumerated in Schedule "E" other than that situated at the Lowell sites appears to have been owned outright by Saveway.

Accordingly, we think the defendants, who have voiced no objection to going through with the purchase of the three out-of-State parcels, are entitled to a deduction from the purchase price. *Margolis* v. *Tarutz*, 265 Mass. 540, 544 (1929). *Smith* v. *MacAlister*, 1 Mass. App. Ct. 22, 25 (1972). There is nothing in the judge's findings or in the evidence which leads us to conclude that the conduct of the defendants has been inequitable. Although from 1966 to 1968 they cited financial difficulty as the reason for the delay in completing their obliga-

---

[4] The judge's finding appears to refer to another warranty, similar in wording, made by the sellers in the purchase and sale agreement. We agree with the plaintiffs' contention that the reference to the second warranty was inadvertent.

tions, they informed the sellers of the breach of the warranty promptly upon learning thereof. See *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 150 (1923). The fact that the buyers may have learned of the breach by reason of their own breach of the Lowell leases is immaterial. Nor are we concerned that the plaintiffs' obligation to remedy the breach of warranty runs to Sure, which is not a party to the purchase and sale agreement. The two agreements are part of a unified transaction, and Saveway and Sure have an identity of interest as shown by the facts that (1) the latter wholly owns the former; (2) the officers are the same; (3) they are represented in this action by the same attorney; (4) they seek to apply the credit due Sure to Saveway's obligation; and (5) various obligations of Saveway have been assumed by Sure, e.g., the payment, discussed *infra,* of interest or rental money to the plaintiffs.

The judge made no finding as to the value of the equipment at the Lowell sites. Accordingly, the case must be remanded for the purpose of determining the fair market value of the equipment in question on June 1, 1966, less the fair market value of Saveway's interest in the equipment under the leases.

The defendants also maintain that the judge failed to consider the effect of the monthly payments made by Sure to the sellers starting in 1966. The final decree ordered Saveway to pay $106,000 plus $47,622.57 in interest; the latter figure is the sum of the interest (at six per cent) on $200,000 (the purchase price for both the out-of-State and the Massachusetts parcels) from June 15, 1966, to March 1, 1968 (the date when the Massachusetts parcels were conveyed for $94,000), plus the interest on $106,000 from March 1, 1968, to the date of the decree.

The defendants argue that the sellers are not entitled to any award of interest, and that the amounts of the monthly payments should be credited against the purchase price. The plaintiffs respond that the monthly payments were intended as rental payments, that the

plaintiffs are also entitled to the award of interest, and that the amount of the monthly payments was properly disregarded in the computation of both interest and principal due.

The judge made no specific finding as to the intended effect of the monthly payments, other than a general finding that the plaintiffs, although accepting such payments, specifically reserved all their rights under the agreements. So far as appears no new agreement was effected between the parties when the payments commenced. In the view we take of the case it is immaterial whether the payments were considered interest or rent, as the defendants must be given credit for them in either event. The defendants took possession of the parcels in June, 1966. The judge was not in error in applying the general rule requiring a purchaser in possession of real estate to pay interest on the unpaid purchase price thereof. See 81 C. J. S., Specific Performance, § 162 d (3); 92 C. J. S., Vendor & Purchaser, § 260 c. See also Restatement: Contracts, § 337 (b).

However, in the absence of an agreement to the contrary, the plaintiffs should not be entitled to the payment of interest twice. Nor are they entitled to the payment of both interest and rent. The obligations are inconsistent. The plaintiffs are not entitled simultaneously to receive the fair rental value of the properties they have agreed to sell and interest on the money they have agreed to sell them for. Accordingly, we hold that the amounts of the monthly payments must be credited against the amount of interest due.

We need not consider other arguments raised by the defendants concerning that part of the decree which ordered Sure and the individual defendants to "cause the payments . . . to be made by Saveway . . .." Contrary to the defendants' interpretation, this language does not

appear to us to have the effect of imposing personal liability on the shareholders and officers of Saveway.[5]

The final decree is to be modified in the following respects: Saveway Oil Company, Inc., is to be ordered to pay Lillian C. Richards, as executrix of the will of Howard C. Richards, (1) the amount of $106,000, less damages for breach of the warranty to be determined by the court, and to be measured by the difference between the fair market value on June 1, 1966, of the equipment listed in items 13 and 14 of Schedule "E" of the agreements and the fair market value on the interest in that equipment which Saveway in fact had on that date under the terms of the leases; and (2) interest (a) from June, 1966, to March, 1968, on the difference between $200,000 and the damages for breach of the warranty determined in accordance with (1) above, and (b) from March, 1968, to the date of the new final decree, on the differences between $106,000 and the damages for breach of the warranty so determined, deducting, however, from such interest an amount to be determined by the court representing the total of the monthly payments of $1,200 between June, 1966, and March, 1968, and $600 after March, 1968, made by Sure Oil & Chemical Corporation to the plaintiffs. The obligation of Saveway Oil Company, Inc., to pay the amounts aforesaid is to be made expressly conditional on the plaintiffs' tender of deeds to the aforementioned properties in accordance with the terms of the agreements. As so modified, the final decree is affirmed.

*So ordered.*

---

[5] The effect, if any, of litigation pertaining to certain sites in Dover, New Hampshire, not having been briefed or argued, will not be considered. Rule 1:13 of the Appeals Court, 1 Mass. App. Ct. 889 (1972).